BRENDAN S. COX (*pro hac vice*)
LAREDO, SMITH & KANE, LLP
101 Federal Street, Suite 650
Boston, MA 02110
Telephone: (617) 443-1100
Facsimile: (617) 443-1174
cox@laredosmith.com

BETHANY D. BENGFORT (State Bar No. 312507)
TURNER BOYD SERAPHINE LLP
155 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone: (650) 521-5930
bengfort@turnerboyd.com

*Attorneys for Defendant*
*OSARO, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OSARO, INC.,<br><br>Defendant. | Case No. 3:25-cv-07170-PHK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:   November 20, 2025<br>Time:   1:30 p.m.<br>Place:   Courtroom F, 15th Floor<br>Judge:   The Honorable Peter H. Kang |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 20, 2025 at 1:30 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Peter H. Kang, located in the Phillip Burton Federal Building & United States Courthouse at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom F, 15th Floor, Defendant OSARO, Inc. ("OSARO" or "Defendant") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for Patent Infringement (the "Complaint") filed by Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff") on August 25, 2025 (ECF No. 1).  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the proposed order, the pleadings and papers on file in this action, and all matters of which the Court may take judicial notice.

## STATEMENT OF THE RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), OSARO seeks an order from the Court dismissing the Complaint in its entirety, including: (1) Plaintiff's first claim for infringement of U.S. Patent No. 9,920,315; (2) Plaintiff's second claim for infringement of U.S. Patent No. 10,075,693; (3) Plaintiff's third claim for infringement of U.S. Patent No. 11,257,272; and (4) Plaintiff's fourth claim for a temporary injunction.

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED.................................................................. 2

III.    FACTUAL BACKGROUND ................................................................................................... 2

        A.      The Asserted Patents and OSARO's Products.................................................... 2

        B.      AIIA's Complaint and Litigation History ....................................................... 3

IV.     LEGAL FRAMEWORK .......................................................................................................... 4

        A.      Rule 12(b)(6) Motion to Dismiss ...................................................................... 4

        B.      Pleading Requirements for Direct Patent Infringement.................................... 4

        C.      Pleading Requirements for Indirect Patent Infringement ............................... 5

        D.      Pleading Requirements for Willful Patent Infringement ............................... 5

V.      ARGUMENT .......................................................................................................................... 6

        A.      The Complaint Fails to Plausibly Plead Direct Infringement because it Merely
                Paraphrases the Claim Language and Does Not Provide Any Facts in Support of its
                Allegations ....................................................................................................... 6

        B.      The Complaint Fails to State a Claim for Induced, Contributory, or Willful
                Infringement Because it Fails to Adequately Plead Direct Infringement ..................... 8

        C.      The Complaint Fails to State a Claim for Induced or Willful Infringement Because it
                Fails to Adequately or Plausibly Plead Specific Intent................................................. 9

        D.      The Complaint Fails to State a Claim for Contributory Infringement Because it Fails
                to Adequately Plead No Substantial Non-Infringing Uses ........................................ 11

        E.      The Court Should Dismiss AIIA's Temporary Injunction Claim Because a Temporary
                Injunction is Not an Independent Cause of Action ...................................................... 11

VI.     CONCLUSION....................................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n,*
  491 F. Supp. 3d 727, 737 (E.D. Cal. 2020)................................................................ 11

*AlexSam, Inc. v. Aetna, Inc.,*
  119 F.4th 27, 46-47 (Fed. Cir. 2024) ............................................................. 5

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009)........................................................................... 4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570 (2007)........................................................................... 4

*Bot M8 LLC v. Sony Corp. of Am.,*
  4 F.4th 1342, 1353 (Fed. Cir. 2021) ...................................................... 4, 5, 8

*BSD Crown, LTD. v. Amazon.com, Inc.,*
  684 F. Supp. 3d 993, 999 (N.D. Cal. 2023) .......................................................... 6

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.,*
  No. 22-CV-00561-JSW, 2022 WL 1556417, at *3 (N.D. Cal. May 17, 2022) ...................... 8

*Dolby Lab'ys Licensing Corp. v. Roku, Inc.,*
  No. 24-CV-04660-EJD, 2025 WL 2021803, at *11 (N.D. Cal. July 18, 2025) ................ 5, 10

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
  363 F.3d 1263, 1272 (Fed. Cir. 2004)........................................................... 5

*Estech Sys. IP, LLC v. Ooma, Inc.,*
  770 F. Supp. 3d 1228, 1232 (N.D. Cal. 2025) ................................................. 5, 8, 9

*Golden v. Google LLC,*
  No. 2024-2024, 2025 WL 1752485, at *3 (Fed. Cir. June 25, 2025) ...................... 5

*Golden v. Qualcomm Inc.,*
  No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023)................................. 8, 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
  579 U.S. 93, 104 (2016)........................................................................ 5

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.,*
  No. 24-CV-02220-JST, 2025 WL 754265, at *25 (N.D. Cal. Mar. 10, 2025) .................... 5, 9

*Irizarry v. Abbott Labs., Inc.,*
  No. 18-4232, 2019 WL 5061127 (E.D. Pa. Oct. 8, 2019) ..................................... 5

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.,*
  285 F.3d 1046, 1055 (Fed. Cir. 2002).......................................................... 5

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
    677 F. Supp. 3d 1079, 1088 (N.D. Cal. 2023) ...................................................... 11

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337, 1350 (Fed. Cir. 2018)..................................................................... 4

*P2i Ltd. v. Favored Tech USA Corp.*,
    No. 23-CV-01690-AMO, 2024 WL 4294652, at *7 (N.D. Cal. Sept. 24, 2024)............... 9, 10

*Ramos v. Chase Home Fin.*,
    810 F. Supp. 2d 1125, 1132 (D. Haw. 2011) .......................................................... 11

*Riganian v. LiveRamp Holdings, Inc.*,
    No. 25-CV-00824-JST, 2025 WL 2021802, at *13 (N.D. Cal. July 18, 2025) ...................... 11

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638, 647 (N.D. Cal. 2022) ................................................... 5, 9, 11

**STATUTES**

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant OSARO, Inc. ("OSARO" or "Defendant") respectfully moves to dismiss Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff")'s Complaint for Patent Infringement (the "Complaint"). The Complaint should be dismissed because AIIA fails to allege any facts that plausibly state a claim that OSARO infringes—directly, contributorily, via inducement, or otherwise—any claim of U.S. Patent Nos. 11,257,272 (the "'272 Patent"), 10,075,693 (the "'693 Patent"), and 9,930,315 (the "'315 Patent") (together, the "Asserted Patents").

## I.    <u>INTRODUCTION</u>

AIIA's Complaint is the perfect example of a baseless complaint brought by a so-called "patent assertion entity" designed to extract a settlement using the threat of litigation. AIIA—a patent assertion entity formed barely three months before this suit was initiated—has no good-faith basis to assert that OSARO's products infringe any of the Asserted Patents. Every single one of the Asserted Patents is directed to a method of recording or generating stereoscopic or synthetic three-dimensional video; in general terms, video that can be used with "virtual reality" technology. OSARO's products, on the other hand, have nothing to do with virtual reality or stereoscopic images. Indeed, none of OSARO's products have *ever* recorded or used any stereoscopic images—period.

Highlighting this reality, AIIA's Complaint does not even attempt to make a plausible allegation of infringement. AIIA accuses essentially every OSARO product of directly, indirectly, and willfully infringing each of the three Asserted Patents, but fails to recite any factual allegations to support such widespread claims of infringement. Instead, AIIA merely quotes or paraphrases *its own* claim language (or generic legal standards) and asserts—without basis or merit—that OSARO's products infringe. AIIA then goes on to assert a claim for a temporary injunction and a demand for over $100 million in lost profits, despite the fact that: (1) a temporary injunction is a form of relief,

not a claim; and (2) as an entity that does not appear to make any products, AIIA is not entitled to *any* lost profits, much less over $100 million of them.[1]

Put simply, AIIA's Complaint is a shakedown.  Because AIIA's complaint baldly and generically asserts, with no plausible factual support, that OSARO's products embody the claim language, the Complaint presents no plausible allegation of infringement—direct, induced, contributory, or otherwise.  The lack of any good-faith, plausible allegations plainly stating what, if any, element of OSARO's products infringe any identified element of any specific claim of any Asserted Patent falls far short of the required pleading standard and, as a matter of law, the Complaint should accordingly be dismissed.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

(1)    Whether the Court should dismiss AIIA's first, second, and third claims for patent infringement because it has not plausibly pleaded a sufficient legal or factual basis for these claims.

(2)    Whether the Court should dismiss AIIA's fourth claim for a temporary injunction because an injunction is a form of relief for a claim, not a claim itself.

## III.    FACTUAL BACKGROUND

### A.    The Asserted Patents and OSARO's Products

The Asserted Patents are directed to particular systems and methods of recording, generating, and embedding calibration information into stereoscopic or synthetic three-dimensional video.  Compl. Ex. A ('272 patent) at Abstract, Ex. B ('693 patent) at Abstract, and Ex. C ('315 patent) at Abstract.  As the Asserted Patents themselves recognize, stereoscopic video imaging technology—as well as the use of machine learning and artificial intelligence in conjunction with this technology— long existed in the prior art.  *See* '272 patent at 1:39-62; '693 patent at 1:24-52, '315 patent at 1:15-24.  As such, each of the Asserted Patents purports to identify novel ways of producing or using stereoscopic video image data—all of which require performing a specific series of steps.  For example, the '315 Patent specifically claims, among other things, a "method for recording stereoscopic 3D video, comprising: (a) recording sequences of stereoscopic images by multiple image sensors of a

---

[1] *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015) (explaining that "if the patentee is not selling a product, by definition there can be no lost profits").

stereoscopic video recording device; and (b) combining the recorded sequences of stereoscopic images into a stereoscopic video sequence… ." '315 patent at 13:18-23.

OSARO is a premier San Francisco-based robotics company that, through its own proprietary and patent-protected technology, specializes in warehouse automation. OSARO's products do not record or use stereoscopic images at all, let alone perform any of the specific steps of the patent claims, such as "combining the recorded sequences of stereoscopic images into a stereoscopic video sequence . . . ." *See* '315 patent at 13:18-23; Decl. of Derik Pridmore ("Pridmore Decl.") ¶ 4.  Perhaps most importantly for a motion to dismiss, AIIA does not even *attempt* (because it cannot) to provide a plausible factual basis for asserting that OSARO's products meet the claim elements.  *See* Compl. ¶¶ 20-40.

**B.      AIIA's Complaint and Litigation History**

AIIA is an apparent "non-practicing" entity focused on "patent protection services" that was incorporated in Florida on May 13, 2025.  Exs. 1 and 2 to the Decl. of Brendan Cox ("Cox Decl.").  In July 2025, AIIA recorded its acquisition of the Asserted Patents.  Cox Decl., Ex. 3.  Since then, it has filed virtually identical complaints alleging infringement of the Asserted Patents against at least five different companies (including OSARO) that offer very different products and employ different types of image data in vastly different ways.  Cox Decl., Ex. 4.  Perhaps unsurprisingly, none of AIIA's complaints make even superficial allegations as to how any accused products actually practice any specific claim of the Asserted Patents.  *See id.*  Instead, the complaints all follow the same general format: (1) pull generic descriptions of the target company's products off the company's website; (2) recite the patent claims; and (3) make entirely generic and conclusory allegations that the target company's products infringe the claims.  *See id.*

The complaint against OSARO is no different.  AIIA generally accuses OSARO's "SightWorks" technology—OSARO's proprietary software that permits robots to adapt to changing warehouse conditions while picking, kitting, and bagging—of infringing the Asserted Patents.  Compl. ¶¶ 1, 20, 22, 25, 28, 31, 34, 37. The Complaint, however, does not make any factual allegations—plausible or otherwise—as to how SightWorks infringes the Asserted Patents.  Compl. ¶¶ 20-40. Instead, the Complaint relies on generalized marketing descriptions from OSARO's website and

asserts—"on information and belief"—that those systems practice each limitation of the asserted claims. *Id.*

AIIA also asserts induced, contributory, and willful infringement. Compl. ¶¶ 41-43, 48, 60, 71, 76, 81, 82, 87. These allegations are wholly generic and conclusory and fail to provide any plausible factual support, instead merely reciting the legal standard for each claim. *Id.* Further, despite having only existed for barely five months, AIIA claims damages from lost profits in excess of $100,000,000 and also asserts a separate claim for a "temporary injunction" to prevent some non-specific "irreparable harm." Compl. ¶¶ 43, 84-94. These allegations are again supported by nothing more than generic and conclusory paraphrases and partial quotations of patent claims, website summaries, and, in some circumstances, legal standards. *Id.*

## IV.  LEGAL FRAMEWORK

### A.  Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts disregard "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

### B.  Pleading Requirements for Direct Patent Infringement

In patent cases, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the [patent] claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Instead, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* "A plaintiff is not required to plead infringement on an element-by-element basis." *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). However, "[t]o plead direct infringement, a plaintiff

must recite 'some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'" *Estech Sys. IP, LLC v. Ooma, Inc.*, 770 F. Supp. 3d 1228, 1232 (N.D. Cal. 2025) (citing Bot M8, 4 F.4th at 1353).

### C.   Pleading Requirements for Indirect Patent Infringement

In addition to direct infringement, a party may be held liable for two different forms of "indirect infringement—induced and contributory infringement." *Sonos, Inc. v. Google LLC,* 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022). If the plaintiff "fail[s][ to adequately plead direct infringement" by any party, then the "complaint also fails to sufficiently plead indirect infringement." *Golden v. Google LLC*, No. 2024-2024, 2025 WL 1752485, at *3 (Fed. Cir. June 25, 2025) (first citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004), then citing *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1055 (Fed. Cir. 2002)). Both induced and contributory infringement also require that the plaintiff plead facts plausibly showing that the accused infringer knew of the patents and the infringement. *Sonos*, 591 F. Supp. 3d at 647; *see also AlexSam, Inc. v. Aetna, Inc.,* 119 F.4th 27, 46-47 (Fed. Cir. 2024).

Both forms of indirect infringement also demand separate pleading requirements. *Id.* To state a claim for induced infringement, the plaintiff must plausibly allege that the accused infringer had "specific intent to encourage infringement of the patent." *Sonos*, 591 F. Supp. 3d at 647; *see also AlexSam, Inc. v. Aetna, Inc.,* 119 F.4th 27, 46-47 (Fed. Cir. 2024). To state a claim for contributory infringement, "the patentee must further adequately allege that the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Id.*

### D.   Pleading Requirements for Willful Patent Infringement

While the Patent Act permits courts in some circumstances to award treble damages for willful patent infringement, such a remedy is "generally reserved for egregious cases of culpable behavior." *Dolby Lab'ys Licensing Corp. v. Roku, Inc.*, No. 24-CV-04660-EJD, 2025 WL 2021803, at *11 (N.D. Cal. July 18, 2025) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104 (2016)). "No binding appellate decisions discuss the pleading requirements for a willful infringement claim." *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2025 WL 754265, at *25 (N.D. Cal. Mar. 10, 2025) (quoting *BSD Crown, LTD. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 999

(N.D. Cal. 2023)). "In applying the Federal Circuit's rules for proving willful infringement, courts in this district have held that, to survive a motion to dismiss, a plaintiff must plausibly plead that the defendant had pre-suit knowledge of the patent-in-suit and that the defendant infringed it deliberately or intentionally." *Id.* "To plead deliberate or intentional infringement, plaintiffs may plead knowledge of infringement, which they can do by pleading that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Id.*

## V.    ARGUMENT

### A.    The Complaint Fails to Plausibly Plead Direct Infringement because it Merely Paraphrases the Claim Language and Does Not Provide Any Facts in Support of its Allegations

AIIA's Complaint is a quintessential example of the type of complaint that this Court has repeatedly found fails to state a claim for patent infringement. AIIA's direct infringement allegations do nothing more than provide generic descriptions of OSARO's products—that the Complaint itself admits were obtained from marketing materials on OSARO's website—and then generically concludes that the products meet some (paraphrased) claim elements. Compl. ¶¶ 20-40. By way of example, the below chart shows a comparison of the claim elements of claim 17 of the '272 patent with AIIA's infringement allegations. AIIA's allegations for the other Asserted Patents are substantially similar. *See* Compl. ¶¶ 20-40.

| Claim 17 of the '272 Patent | AIIA's Direct Infringement Allegations |
| --- | --- |
| 17. A method for generating synthetic image data comprising: receiving, by a processor, a database of background images, an object database including 3D models, a library of texture materials, a library of scene metadata, and a library of camera setting files; constructing, by a computer graphics engine, a first synthetic image scene having an image scene class specified in a first scene metadata file, the constructing comprising: selecting a background image from the database of background images, wherein the background image is associated with the image scene class and arranged in a background portion of the first synthetic image scene according to instructions | The '272 Patent includes claims directed to a method for generating synthetic images, comprising receiving databases of background images, 3D models, texture materials, scene metadata, and camera settings; constructing a synthetic image scene by selecting and arranging background images and 3D models; covering 3D models with texture materials; placing a virtual camera to capture a camera view; rendering the camera view as a synthetic image; and providing the synthetic image to a training dataset for machine learning. Compl. ¶ 21.<br><br>Upon information and belief, Osaro's SightWorks software and associated robotic systems generate synthetic image data, including stereoscopic images, for training |

included in the first scene metadata file;

populating a foreground portion of the first synthetic image scene with 3D models associated with the image scene class and arranging the 3D models in a foreground portion of the synthetic image scene according to instructions included in the first scene metadata file;

covering the 3D model with a texture material selected from the library of texture materials, wherein the texture material is associated with the image scene class; placing, by an image projector, a virtual camera within the synthetic image scene, the virtual camera capturing a camera view of the first synthetic image scene contained in an image plane defined by a camera settings file having camera position data, camera intrinsics, camera calibration settings, camera capture                                                                                      settings;

incrementally varying at least one parameter included in the camera settings file to provide a first series of camera views, wherein each camera view has a unique image plane;

for each camera view included in the first series of camera views, rendering projection coordinates included in the image plane of a camera view as a synthetic image; and

rendering additional image data for the first synthetic image scene at each unique camera view included in the first series of camera views; constructing a second synthetic image scene having the image scene class selected for the first synthetic image scene, the second synthetic image scene constructed according to instructions included in a second scene metadata file;

placing, by the image projector, the virtual camera in the second synthetic image scene, the virtual camera capturing a second series of camera views of the second synthetic image scene, wherein the second series of camera views has the same position and direction as the first series of camera views capturing the first synthetic image scene;

for each camera view included in the second series of camera views, rendering projection coordinates included in an image plane for a camera view as a synthetic image;

machine learning models used in their robotic vision systems, infringing one or more claims of the '272 Patent. Compl. ¶ 22.

Osaro's systems construct synthetic image scenes by selecting background images, 3D models, and texture materials; place virtual cameras to capture views; render synthetic images with depth information and image segmentation maps; and apply augmentation effects, such as noise or blur, to create training datasets, directly infringing the methods claimed in the '272 Patent. Compl. ¶ 23.

Osaro's marketing materials, including statements on its website, highlight the use of deep learning technology and advanced vision systems for precise pick-and-place robotics, which rely on generating and processing synthetic image data in a manner that falls within the scope of the '272 Patent's claims. Compl. ¶ 24.

By way of example, and without limitation, Osaro's SightWorks software and robotic systems practice the method of Claim 17 of the '272 Patent by: Receiving databases of background images, 3D models, texture materials, scene metadata, and camera settings for constructing synthetic image scenes; Constructing a synthetic image scene by selecting a background image associated with an image scene class, populating the scene with 3D models, and covering the models with texture materials according to scene metadata instructions; Placing a virtual camera within the synthetic image scene to capture a camera view defined by camera settings; Rendering the camera view as a synthetic image using a computer graphics engine; and Providing the synthetic image to a training dataset for a machine learning system used in robotic vision tasks. Compl. ¶ 25.

<table>
<tr><td>

rendering additional image data for the second synthetic image scene at each unique camera view included in the second series of camera views;                                                  and

assembling synthetic images and the additional image data for the first and second synthetic image scenes in a training dataset associated with the image scene class, wherein the training dataset is used to train a machine learning system to perform a computer vision task.

Compl. Ex. A at 51:01-52:28.

</td><td></td></tr>
</table>

These generic and conclusory allegations—which do nothing more than "parrot[] the claim language" and "conclud[e] that the accused product has those elements"—cannot state a claim for direct infringement of a patent. *Estech*, 770 F. Supp. 3d. at 1233 (quoting *Bot M8*, 4 F.4th at 1353); *see also Golden v. Qualcomm Inc.,* No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023) (affirming dismissal where the "complaint did not adequately explain *how* [the accused] products infringe the asserted patent claims); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.,* No. 22-CV-00561-JSW, 2022 WL 1556417, at *3 (N.D. Cal. May 17, 2022) (dismissing complaint where the patentee "recited the claim limitations verbatim, and states [Defendant's] products contain those limitations"). AIIA alleges—largely "on information and belief" and without pointing to any plausibly infringing factual support—that OSARO uses generic stereoscopic or synthetic imaging technology. Compl. ¶¶ 20-40. At most, AIIA suggests that OSARO uses "deep learning technology" and "advanced vision systems"—neither of which entail or suggest the use of stereoscopic or synthetic imaging. Compl. ¶¶ 24, 30, 36. OSARO also entirely fails to tie this technology—which its own patents admit was in the prior art—to the claim elements, or explain how this technology supposedly infringes the Asserted Patents. *See id.* As this Court has held, a patent plaintiff must, at a minimum, include "factual allegations to support a plausible claim of infringement beyond simply identifying the products and claiming they infringe." *Estech*, 770 F. Supp. 3d. at 1233. AIIA has not done so here, so its direct infringement claims must be dismissed.

**B.    The Complaint Fails to State a Claim for Induced, Contributory, or Willful Infringement Because it Fails to Adequately Plead Direct Infringement**

In addition to direct infringement, AIIA's Complaint also fails to plausibly state claims for indirect infringement (i.e., induced and contributory infringement) and willful infringement. As a dispositive, initial matter, as discussed above, the Complaint fails to state a claim for direct infringement by any party. This necessarily means that it has also failed to state a claim for indirect and willful infringement. *See Golden*, 2025 WL 1752485, at *3 ("Because [plaintiff] has failed to adequately plead direct infringement by [defendant], his complaint also fails to sufficiently plead indirect infringement and willful infringement."); *Estech*, 770 F. Supp. 3d. at 1234 ("Having failed to allege any plausible claim for direct infringement of the Asserted Patents, Estech's indirect and willful infringement claims also fail."). AIIA's indirect and willful infringement claims must therefore be dismissed.

**C.** **The Complaint Fails to State a Claim for Induced or Willful Infringement Because it Fails to Adequately or Plausibly Plead Specific Intent**

AIIA's induced and willful infringement claims must also be dismissed because AIIA has failed to plead sufficient fact to create an inference of specific intent. To state a claim for induced and willful infringement, a plaintiff must plead facts plausibly showing that the accused infringer had knowledge of infringement and specifically intended for that infringement to occur. *See, e.g., Hewlett Packard*, 2025 WL 754265, at *25-*27; *Sonos*, 591 F. Supp. 3d at 647. This Court has consistently found that, where an allegation of specific intent is premised on a demand letter—as AIIA's allegation appears to be here (*see, e.g.,* Compl. at ¶¶ 52, 64, and 75)—the letter must communicate a specific charge of infringement based on a specific accused product. *See id.*; *see also P2i Ltd. v. Favored Tech USA Corp.*, No. 23-CV-01690-AMO, 2024 WL 4294652, at *7 (N.D. Cal. Sept. 24, 2024) (dismissing induced and willful infringement claims where the cited demand letter "does not analyze the patents or apply them to any product or method").

AIIA's only allegation relevant to knowledge of infringement is that, prior to filing the complaint, it sent OSARO "a formal demand letter identifying the Asserted Patents and asserting that Defendant's software Products infringe one or more of its claims." Compl. ¶ 2; *see also id.* ¶¶ 41, 52,

64, 75. AIIA does not identify when the letter was sent, where the letter was sent,[2] what products were identified, whether there were other patents included in the letter, whether there was any analysis of infringement performed, or what specific language was used to communicate its charge of infringement. *See id.* Nor does AIIA attach the supposed letter to its Complaint, as is common practice for patent infringement complaints. *See, e.g.*, *P2i*, 2024 WL 4294652, at *7. Without any such allegations, it cannot state a claim for either induced or willful infringement and its claims must be dismissed.

AIIA also claims that OSARO had knowledge of the Asserted Patents because it participated "in imaging technology forums and review of competitor offerings." Compl. ¶ 48. AIIA does not explain how participation in "imaging technology forums" and "review of competitor offerings" would give OSARO knowledge of the Asserted Patents—it does not claim, for example, that OSARO was present at an "imaging technology forum" where the patents were discussed, or that there was a particular "competitor offering" reviewed by OSARO that contained references to the Asserted Patents. *See id*. Such vague and conclusory allegations are insufficient to plausibly allege knowledge of the patents. *See P2i*, 2024 WL 4294652, at *7. And, frankly, even if they were sufficient, it wouldn't matter, because "knowledge of the patents alone is not enough to plead the specific intent" necessary for induced and willful infringement. *Id.* at *8.

The only other allegation that AIIA makes regarding specific intent is that OSARO provided "technical documentation, tutorials, and customer support services" encouraging use of its software. Compl. ¶ 1; *see also id.* ¶¶ 41, 54, 87. AIIA does not identify what those materials said, to whom they were provided, or how they instructed users to perform each (or any) step of the asserted claims. Courts in this district regularly reject inducement claims based on such vague allegations. *See Dolby*, 2025 WL 2021803, at *10 (noting that "courts in this District have held that passing references to user manuals, guides, and support articles, without ever saying what those materials contain, are wholly inadequate for an inference of specific intent"). The absence of any non-conclusory factual

---

[2] Notably, the Complaint itself raises the issue of whether any purported "demand letter" was properly served on, or in fact received by, OSARO. *See, e.g.,* Compl. ¶¶ 4; 8 (alleging OSARO's principal address as "1045 Bryant St." in San Francisco—an address with which OSARO is not, and has never been, associated); *see also* Pridmore Decl. ¶ 5.

allegations showing both knowledge and specific intent thus compels dismissal of AIIA's inducement and willful infringement claims.

### D. The Complaint Fails to State a Claim for Contributory Infringement Because it Fails to Adequately Plead No Substantial Non-Infringing Uses

The Complaint also fails to meet the pleading requirements for contributory infringement for the additional reason that it fails to plausibly allege that the accused products lack any substantial non-infringing use.  To state a claim for contributory infringement, the patentee must plausibly allege, among other things, that the accused products cannot reasonably "be used for purposes *other than* infringement." *Sonos*, 591 F. Supp. 3d at 648; *see also Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1088 (N.D. Cal. 2023).  Allegations that state, without more, that "the accused products . . . cannot be used for purposes other than infringement" are "conclusory" and cannot support a claim of contributory infringement.  *Id.*

AIIA asserts, without elaboration or any well-pleaded, plausible factual basis, that OSARO "provid[es] modules within its software" that are "exclusively designed and marketed for the infringing functionalities, with no substantial non-infringing use, as they are integral to the software's image enhancement workflows." Compl. ¶ 43; *see also* Compl. ¶¶ 1, 54.  Not only are these statements entirely conclusory, AIIA fails to identify what particular "modules" within OSARO's software purportedly contribute to the infringement.  Such allegations are insufficient to state a claim for contributory infringement and must be dismissed.

### E. The Court Should Dismiss AIIA's Temporary Injunction Claim Because a Temporary Injunction is Not an Independent Cause of Action

Separate and apart from its claims for patent infringement, AIIA asserts a claim for a "temporary injunction." Compl. ¶¶ 84-94.  An injunction, however, is "a remedy and not a standalone cause of action." *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *13 (N.D. Cal. July 18, 2025); *see also A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 737 (E.D. Cal. 2020) (explaining that "injunctive relief is not an independent cause[] of action"); *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1132 (D. Haw. 2011) ("The

court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action."). This claim must therefore be dismissed.

## VI.    **CONCLUSION**

For the reasons set forth above, AIIA fails to state a viable claim for patent infringement. Accordingly, OSARO respectfully requests that this Motion be GRANTED and the Complaint be dismissed.

Dated: October 13, 2025               Respectfully submitted,

/s/*Brendan S. Cox*
BRENDAN S. COX (*pro hac vice*)
LAREDO, SMITH & KANE, LLP
101 Federal Street, Suite 650
Boston, MA 02110
Telephone: (617) 443-1100
Facsimile: (617) 443-1174
cox@laredosmith.com

BETHANY D. BENGFORT (State Bar No. 312507)
TURNER BOYD SERAPHINE LLP
155 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone: (650) 521-5930
bengfort@turnerboyd.com

*Attorneys for Defendant*
*OSARO, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2025, I caused a true and correct copy of the foregoing notice of motion and motion, with accompanying declarations and exhibits and proposed order, to be filed in this Court's CM/ECF system, which will send notification of such filing to all parties who have appeared in this matter.

Executed on this October 13, 2025.

/s/*Brendan S. Cox*
Brendan S. Cox