Christopher J. Fry, Esq. (SBN: 298874)
*Email: cfry@frylawcorp.com*
**FRY LAW CORPORATION**
4227 Sunrise Boulevard, Suite 200
Fair Oaks, California 95628
Telephone: (916) 291-0700
Facsimile: (916) 848-0256

Attorney for Plaintiff,
**ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.**

Fry Law Corporation Trial Attorneys

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br>Plaintiff,<br>vs.<br>OSARO, INC.,<br>Defendant. | **CASE NO.: 3:25-cv-07170-PHK**<br><br>**PLAINTIFF'S OPPOSITION TO DFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINTS**<br><br>Date: February 10, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom F, 15th Floor<br>Judge: The Honorable Peter H. Kang |
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br>Plaintiff,<br>v.<br>PARALLEL DOMAIN, INC.<br>Defendant. | **CASE NO. 3:25-cv-07658-PHK** |

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), each Defendant seeks an order from the Court dismissing its respective FAC in its entirety.

Fry Law Corporation Trial Attorneys

## TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................... 5

II. STATEMENT OF FACTS ....................................................................... 7

A. The Asserted Patents ............................................................................ 7

B. The Accused Products ........................................................................... 7

C. AIIA's Pre-Suit Notice to Defendants .................................................... 8

D. Procedural History ................................................................................. 8

III. LEGAL STANDARD ................................................................................ 8

IV. ARGUMENT ........................................................................................... 10

A. The FACs Plausibly Allege Direct Infringement Against Both Defendants ............... 10

1. **AIIA Adequately Pleads Direct Infringement Against OSARO** ....................... 10

B. AIIA Adequately Pleads Indirect Infringement ........................................ 15

**1. AIIA Plausibly Alleges Induced Infringement** ........................................ 16

**2. AIIA Plausibly Alleges Contributory Infringement** ................................. 16

C. AIIA Adequately Pleads Willful Infringement ........................................... 17

D. Count IV Properly Seeks Injunctive Relief as a Remedy ........................... 17

V. CONCLUSION ......................................................................................... 18

CERTIFICATE OF SERVICE ....................................................................... 20

# TABLE OF AUTHORITIES

**Cases**


*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
491 F. Supp. 3d 727, 737 (E.D. Cal. 2020). .......... 21

*ALD Social, LLC v. Verkada, Inc.*,
654 F. Supp. 3d 972, 980-81 (N.D. Cal. 2023) .......... 15

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27, 46-47 (Fed. Cir. 2024). .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 6, 9, 10, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 10, 14

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342, 1353 (Fed. Cir. 2021) .......... 5, 6, 10, 11, 21

*British Telecomms. PLC v. IAC/InteractiveCorp.*,
381 F. Supp. 3d 293, 299 (D. Del. 2019) .......... 7

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922, 926-30 (Fed. Cir. 2012). .......... 21

*Cf. Dolby Labs. Licensing Corp. v. Roku, Inc.*,
No. 24-CV-04660-EJD, 2025 WL 2021803, at *10 (N.D. Cal. July 18, 2025) .......... 19

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) .......... 10, 21

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1052 (9th Cir. 2003) .......... 16

*Entropic Communications, LLC v. Comcast Corp.*,
702 F. Supp. 3d 954, 965 (C.D. Cal. 2023) .......... 18

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 16

*Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*,
616 F.3d 1357, 1373 (Fed. Cir. 2010) .......... 9, 20

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
579 U.S. 93, 104 (2016) .......... 20




Fry Law Corporation Trial Attorneys

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.*,
No. 24-CV-02220-JST, 2025 WL 754265, at *25-27 (N.D. Cal. Mar. 10, 2025)....... 20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198, 216 (3d Cir. 2002)........................................................................ 7

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
285 F.3d 1046, 1053 (Fed. Cir. 2002). ................................................................ 20

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277, 1286 (Fed. Cir. 2013) ................................................................ 7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372, 1379 (Fed. Cir. 2017) ................................................................ 11

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
800 F.3d 99, 107 n.31 (3d Cir. 2015)................................................................... 7

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337, 1350 (Fed. Cir. 2018) ......................6, 10, 11, 13, 15, 17, 18, 19, 21

*Polaris PowerLED Technologies, LLC v. Nintendo Co., Ltd.*,
623 F.Supp.3d 1132, 1139 (N.D. Cal. 2022) ...................................................... 16

*SAP Aktiengesellschaft v. i2 Technologies, Inc.*,
250 F.R.D. 472, 474-75 (N.D. Cal. 2008) .......................................................... 17

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638, 647 (N.D. Cal. 2022) .....................................................18, 19

Fry Law Corporation Trial Attorneys

Fry Law Corporation Trial Attorneys

**I. INTRODUCTION**

Defendants OSARO, Inc. (**"OSARO"**) and Parallel Domain, Inc. (**"Parallel Domain"**) (collectively, **"Defendants"**) seek dismissal of Plaintiff Artificial Intelligence Industry Association, Inc.'s (**"AIIA"** or **"Plaintiff"**) First Amended Complaints (**"FACs"**) under Rule 12(b)(6). The Motion should be denied in its entirety. The FACs plausibly allege direct, induced, contributory, and willful infringement of U.S. Patent Nos. 9,930,315 (the **"'315 Patent"**), 10,075,693 (the **"'693 Patent"**), and 11,257,272 (the **"'272 Patent"**) (collectively, the **"Asserted Patents"**) under the governing pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

The Federal Circuit has unequivocally and repeatedly held that patent plaintiffs are "not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). "To the extent [any] district court . . . ha[s] adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Id.* at 1352. This binding precedent forecloses Defendants' primary argument.

Defendants' Motion fundamentally misconstrues both the applicable legal standards and AIIA's pleadings. Far from being *"conclusory,"* the FACs contain detailed factual allegations derived from Defendants' own public disclosures, including their websites, marketing materials, product documentation, technical specifications, and customer case studies, that map Defendants' accused products to specific claim elements of the Asserted Patents. The comprehensive claim charts attached as Exhibit D to each FAC provide element-by-element analysis documenting how each Defendant's technology practices the claimed inventions.

The Federal Circuit has made clear that a patent infringement complaint need not *"prove its case at the pleading stage." Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Rather, the complaint must contain *"some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent*

*claim." Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). The FACs easily satisfy this standard. Importantly, the Federal Circuit in *Nalco* reversed dismissal even where the plaintiff lacked direct access to the defendant's manufacturing facility, holding that factual disputes about claim scope and technical operation are "not appropriate to resolve . . . on a Rule 12(b)(6) motion, without the benefit of claim construction." 883 F.3d at 1349-50. The same principle applies here with equal force.

Defendants' technical arguments, that OSARO's SightWorks does not use *"synthetic images"* or that Parallel Domain's technology uses *"3D Gaussian Splatting"* rather than the claimed methods, are factual disputes inappropriate for resolution on a Rule 12(b)(6) motion. Indeed, Defendants' arguments "read like classic *Markman* arguments" that the Federal Circuit has squarely held "are not suitable for resolution on a motion to dismiss." *Nalco*, 883 F.3d at 1349. The "purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Id.* (quoting *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)).

At this ***pleadings stage***, the Court must accept AIIA's well-pleaded factual allegations as true and draw all reasonable inferences in AIIA's favor. *See Iqbal*, 556 U.S. at 678. The parties' competing characterizations of Defendants' technologies are precisely the types of issues that must be developed through discovery and resolved at summary judgment or trial.

Defendants' Motion also ignores critical contextual factors. AIIA's allegations are pleaded upon *"information and belief"*, a pleading device specifically permitted where, as here, Defendants control access to non-public technical details about their products' implementation. The Federal Circuit has recognized that "[a] defendant cannot shield itself from a complaint for direct infringement" when the relevant facts are not in the public domain and are within the defendant's exclusive control. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013). *See also Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 107 n.31 (3d Cir. 2015); see also In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002); British Telecomms. PLC v. IAC/InteractiveCorp., 381 F. Supp. 3d 293, 299 (D. Del. 2019)*. The plausibility of AIIA's allegations is reinforced

by the logical connection between Defendants' publicly disclosed capabilities and the claimed inventions: both Defendants are in the business of generating synthetic data for machine learning applications, the very technology covered by the Asserted Patents.

The Court should deny Defendants' Motion and allow this case to proceed to discovery, where AIIA can further substantiate its claims based on Defendants' internal documents, source code, and technical specifications.

## II. STATEMENT OF FACTS

### A. The Asserted Patents

The Asserted Patents cover technologies in synthetic image data generation and stereoscopic video processing for machine learning applications. The **'272 Patent** is directed to methods and systems for generating synthetic image data—including stereoscopic images with depth, segmentation, and other data channels—by simulating real-world camera behavior in virtual 3D scenes. The patent addresses the critical problem of creating training datasets for machine learning systems without the time and expense of manually collecting and labelling real-world images. '272 Patent, Abstract, 2:39-51.

The **'693 Patent** covers systems for recording stereoscopic 3D video while embedding calibration metadata (such as camera parameters and sensor readings) into the video stream in real time. '693 Patent, Abstract, 1:17-20. The **'315 Patent** relates to methods for processing stereoscopic 3D video to stabilize it for viewing, using both static calibration data (such as lens distortion profiles) and dynamic calibration data (per-frame sensor readings). '315 Patent, Abstract, 3:59-4:02.

### B. The Accused Products

**OSARO's SightWorks:** OSARO develops robotic vision software for warehouse automation. Its SightWorks platform uses *"deep learning technology and advanced vision systems for precise pick-and-place robotics."* OSARO FAC ¶ 23. OSARO's public materials describe using synthetic data generation, stereoscopic imaging with multiple cameras, and real-time calibration data embedding for robotic perception tasks. *Id.* ¶¶ 23-32. SightWorks processes visual data from camera arrays, including fisheye lenses for wide-field capture,

Fry Law Corporation Trial Attorneys

and generates synthetic training data for its machine learning models. *Id.* ¶¶ 25, 28.

**Parallel Domain's PD Replica:** Parallel Domain is a synthetic data company that generates training datasets for autonomous vehicle and other machine learning applications. Its PD Replica platform creates virtual environments that can be rendered in real-time from arbitrary camera viewpoints, complete with semantic segmentation, depth maps, and other data channels. PD FAC ¶¶ 17-21. Parallel Domain's own materials describe *"generating synthetic data for perception tasks,"* including configuring virtual cameras with specific sensor parameters and rendering images with ground truth labels. *Id.* ¶¶ 63-70.

### C. AIIA's Pre-Suit Notice to Defendants

Prior to filing suit, AIIA sent formal demand letters to both Defendants identifying the Asserted Patents and asserting that Defendants' products infringe. OSARO FAC ¶ 6; PD FAC ¶ 14. These letters specifically identified the accused products and provided AIIA's infringement contentions. Despite receiving these letters—and having the opportunity to investigate and respond—Defendants continued and expanded their infringing activities. *Id.* These demand letters satisfy the requirements for establishing knowledge under *Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010), which requires only that a letter "communicate a charge of infringement of specific patents by a specific . . . group of products."

### D. Procedural History

AIIA filed its original complaints against OSARO and Parallel Domain in August and September 2025, respectively. Following Defendants' objections, AIIA filed the operative FACs, which include comprehensive claim charts (Exhibit D) mapping each claim element to specific features of Defendants' products. The OSARO FAC was filed on October 27, 2025; the PD FAC was filed on December 4, 2025. These claim charts provide detailed, element-by-element analysis based on publicly available information and Plaintiff will supplement with discovery of Defendants' non-public documents.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient



Fry Law Corporation Trial Attorneys

factual allegations to *"state a claim to relief that is plausible on its face." Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible *"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.*

In patent cases, a plaintiff need not *"prove its case at the pleading stage." Nalco*, 883 F.3d at 1350. Rather, *"there must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8*, 4 F.4th at 1353. A plaintiff is *"not required to plead infringement on an element-by-element basis," id.* at 1352, and allegations *"upon information and belief"* are sufficient when the accused infringer controls the evidence. *Nalco*, 883 F.3d at 1350.

The Federal Circuit has emphasized that "plausibility 'is not akin to a probability requirement.'" *Bot M8*, 4 F.4th at 1352 (quoting *Iqbal*, 556 U.S. at 679). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. The question is whether the allegations "make sense" in context—that is, whether there is a logical connection between the accused product's disclosed capabilities and the claimed invention. *Bot M8*, 4 F.4th at 1353-54.

In the case of *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), the Federal Circuit reversed a dismissal where the complaint identified accused products, attached the asserted patents, and alleged that the products meet "each and every element of at least one claim . . . either literally or equivalently." *Id.* at 1260. The Federal Circuit held these "disclosures and allegations are enough to provide [defendant] fair notice of infringement of the asserted patents." *Id.* AIIA's FACs provide substantially more detail than the complaint approved in *Disc Disease*.

At the pleading stage, courts do not resolve competing factual narratives or technical disputes. *See Nalco*, 883 F.3d at 1350-51. The technical disputes raised by the Defendants fall squarely within this category.

///



Fry Law Corporation Trial Attorneys

Fry Law Corporation Trial Attorneys

## IV. ARGUMENT

### A. The FACs Plausibly Allege Direct Infringement Against Both Defendants

Defendants' primary argument is that the FACs merely *"paraphrase"* claim language without providing factual support for infringement. Mot. at 8. This characterization is simply wrong. The FACs identify specific accused products, describe their technical functionality based on Defendants' own public disclosures, and explain how those products practice each element of the asserted claims. The detailed claim charts attached as Exhibit D provide element-by-element analysis with citations to Defendants' marketing materials, technical documentation, and customer case studies.

Defendants' argument rests on a misstatement of the governing standard. The Federal Circuit has expressly rejected the notion that plaintiffs must allege "every element of every claim" with specific factual support. *Bot M8*, 4 F.4th at 1352 ("To the extent this district court and others have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported"). Instead, it is sufficient "that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Id.* (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). The FACs indisputably satisfy this standard.

The Federal Circuit has repeatedly reversed dismissals of patent infringement complaints that, like AIIA's, provide *"plausible and specific factual allegations"* linking the accused products to the claimed invention. *See Nalco*, 883 F.3d at 1350-55 (reversing dismissal where complaint alleged specific facts about defendant's process). *Nalco* is particularly instructive: the Federal Circuit found that allegations about the defendant's manufacturing process were sufficient to survive dismissal even though the plaintiff lacked direct access to the defendant's facility. *Id.* at 1350. The same logic applies here: AIIA has pleaded detailed factual allegations based on publicly available information, and discovery will reveal Defendants' internal technical details.

#### 1. AIIA Adequately Pleads Direct Infringement Against OSARO

**The '272 Patent (Synthetic Image Generation):** The OSARO FAC plausibly alleges

that SightWorks infringes Claim 17 of the ‘272 Patent. The FAC identifies specific features of SightWorks that correspond to each claim element:

- *Receiving databases of images, models, and metadata:* The FAC alleges that SightWorks *"imports or accesses all the necessary digital assets for synthetic scene creation: e.g. a repository of background images (warehouse scenes, etc.), a catalogue of 3D object models (items to place in scenes), texture libraries (surface visuals for realism), scene metadata files (defining scene parameters), and camera setting files (virtual camera parameters)."* OSARO FAC Ex. D at 3.
- *Constructing synthetic image scenes:* The FAC alleges that SightWorks *"use[s] a graphics engine to construct a synthetic 3D scene of a given type (‘image scene class’) as dictated by a scene metadata file,"* selecting *"an appropriate background image from the library that corresponds to the specified class—for example, a warehouse backdrop for a ‘warehouse’ scene class." Id.* at 3-4.
- *Rendering with virtual cameras:* The FAC alleges that SightWorks *"places a virtual camera (with parameters loaded from a camera settings file) into the synthetic scene"* and *"renders a synthetic image of the scene from that perspective." Id.* at 5-6.
- *Training machine learning systems:* The FAC alleges that SightWorks *"assembles all the synthetic images and their additional data... into a training dataset labelled for that scene class, which is then used to train a computer vision model (e.g. a deep neural network for robotic perception)." Id.* at 8.

OSARO argues that SightWorks *"does not construct synthetic images"* and instead *"uses real images obtained from cameras placed around a physical packaging environment."* Mot. at 9. But this is precisely the type of factual dispute that cannot be resolved on a motion to dismiss. The Federal Circuit has squarely held that "[i]t is not appropriate to resolve these disputes . . . on a Rule 12(b)(6) motion, without the benefit of claim construction." *Nalco*, 883 F.3d at 1350. AIIA’s allegations—that OSARO’s publicly disclosed *"deep learning technology"* and *"advanced vision systems"* rely on synthetic data generation for training—

are supported by OSARO's own marketing materials. The Court must accept these allegations as true at this stage. *See Iqbal*, 556 U.S. at 678.

**The '693 and '315 Patents (Stereoscopic Video Processing):** The OSARO FAC similarly pleads detailed factual allegations supporting infringement of the '693 and '315 Patents. For the '693 Patent, the FAC alleges that SightWorks captures stereoscopic video from multiple cameras, embeds calibration metadata in real time, and encodes that metadata in the video file's metadata fields. OSARO FAC ¶¶ 54-58; Ex. D at 9-13. For the '315 Patent, the FAC alleges that SightWorks processes stereoscopic video sequences with embedded calibration information, extracts static and dynamic calibration data, and applies video stabilization to both left and right channels. *Id.* ¶¶ 62-66; Ex. D at 13-18.

OSARO's assertion that SightWorks *"does not capture any video at all—much less stereoscopic video"* (Mot. at 10) directly contradicts OSARO's own public disclosures describing its *"advanced vision systems"* that *"process visual data"* from multiple cameras. OSARO FAC ¶¶ 57, 65. This factual dispute must be resolved through discovery, not on the pleadings. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations. *Twombly*, 550 U.S. at 556. AIIA's allegations easily clear this bar.

**2. AIIA Adequately Pleads Direct Infringement Against Parallel Domain**

**The '272 Patent:** Parallel Domain argues that its technology cannot infringe the '272 Patent because it uses *"3D Gaussian Splatting"* to create simulations from real-world image captures rather than by *"selecting a background image from a database."* Mot. at 11-14. This argument fails for multiple reasons.

- *First*, Parallel Domain's technical characterization is a factual dispute inappropriate for resolution on a motion to dismiss. The FAC alleges that Parallel Domain's technology *"generates digital twins from real capture data, creating background environments 'nearly indistinguishable from the detail of the real world.'"* PD FAC Ex. D at 3. Whether this process constitutes *"selecting a background image from the database"* is a



Fry Law Corporation Trial Attorneys

technical question that requires claim construction and expert testimony—not a determination the Court can make at the pleading stage. As the Federal Circuit held in *Nalco*, disputes that "hinge on" claim terms like "flue gas" or "injecting"—or here, "selecting a background image"—are "not appropriate to resolve . . . on a Rule 12(b)(6) motion." 883 F.3d at 1349.

- *Second*, Parallel Domain's own public materials describe functionality that plausibly falls within the claims. Parallel Domain's promotional video describes users who can *"choose from our massive library of cities, highways, residential neighborhoods, or even generate your own environments"* and *"configure exactly your camera, lidar, and radar sensors with options to include a rich set of labels."* PD FAC ¶¶ 63-65. This is precisely what the '272 Patent claims: selecting scene elements from libraries and configuring virtual cameras to render synthetic images for machine learning training.
- *Third*, even accepting Parallel Domain's characterization of its technology, infringement may still exist under the doctrine of equivalents. The FAC alleges that Parallel Domain's processes perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. PD FAC ¶¶ 74-77. Dismissal of doctrine of equivalents claims at the pleading stage is improper unless there are extraordinary circumstances. *See ALD Social, LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 980-81 (N.D. Cal. 2023). The Federal Circuit in *Nalco* specifically reinstated the plaintiff's doctrine of equivalents claim, finding that the plaintiff "explicitly incorporated detailed infringement contentions explaining its doctrine of equivalents claim." 883 F.3d at 1354. AIIA has done the same here.

**The '693 Patent:** Defendants argue that the PD FAC's claim chart for the '693 Patent actually addresses a different patent (U.S. Patent No. 10,979,693) rather than the asserted '693 Patent (U.S. Patent No. 10,075,693). Mot. at 14-15. AIIA acknowledges this typographical error in the Exhibit D claim chart and will seek leave to file a corrected version. However, this error does not warrant dismissal. The body of the PD FAC correctly identifies the '693 Patent by both number (10,075,693) and title (*"Embedding Calibration Metadata into*

*Stereoscopic Video Files*"). PD FAC ¶ 42. The allegations in the FAC itself adequately plead infringement of the correct patent. Courts routinely permit correction of such errors, and dismissal would be an inappropriate remedy for a mistake that does not prejudice Defendants' ability to understand the allegations against them. The 9th Circuit has established that Federal Rule of Civil Procedure 15(a) should be applied with extreme liberality in favor of granting leave to amend. In *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) the court held that "dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." The court emphasized that there exists a presumption under Rule 15(a) in favor of granting leave to amend absent prejudice or other factors established by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962). *Foman v. Davis* established that leave to amend "shall be freely given when justice so requires" absent specific justifying reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The 9th Circuit has consistently held that prejudice to the opposing party carries the greatest weight and serves as the "touchstone of the inquiry under rule 15(a)" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The party opposing the amendment bears the burden of showing prejudice. *Id.*

Patent infringement cases receive particularly favorable treatment regarding pleading amendments because of their unique technical complexity. In *Polaris PowerLED Technologies, LLC v. Nintendo Co., Ltd.*, 623 F.Supp.3d 1132, 1139 (N.D. Cal. 2022), the Western District of Washington observed that "patent cases are unique with respect to pleadings, and arguments for more specificity in a complaint are not always warranted." This principle recognizes that patent litigation involves complex technical subject matter that may require refinement through the pleading process.

The Northern District of California has similarly recognized that patent cases warrant liberal treatment of amendments. In *SAP Aktiengesellschaft v. i2 Technologies, Inc.*, 250 F.R.D. 472, 474-75 (N.D. Cal. 2008), the court held that Federal Rule 15(a) authorizes district



Fry Law Corporation Trial Attorneys

courts to grant leave to amend when justice so requires, and that the deadlines under Patent Local Rules must not trump necessary modifications pursuant to court orders authorized by the Federal Rules.

**The '315 Patent:** Parallel Domain argues that its technology does not embed *"inertial measurement data"* because its camera rigs do not contain accelerometers. Mot. at 16-17. But the FAC does not allege that Parallel Domain uses physical accelerometers. Rather, the FAC alleges that Parallel Domain's virtual camera system includes parameters equivalent to inertial measurement data—specifically, the position, orientation, and motion parameters of the virtual camera. PD FAC Ex. D at 4. Whether these virtual camera parameters satisfy the claim limitation is a question of claim construction, not pleading sufficiency. The Federal Circuit has held that such "claim construction dispute[s]" are inappropriate at the Rule 12(b)(6) stage of the proceedings. *Nalco*, 883 F.3d at 1349.

Parallel Domain also argues that it does not use *"video steganography."* Mot. at 17. The FAC alleges that Parallel Domain uses *"techniques equivalent to steganography for seamless metadata presentation."* PD FAC Ex. D at 5. Again, whether these techniques satisfy the claim limitation under literal infringement or the doctrine of equivalents is a question for claim construction and expert testimony, not a motion to dismiss.

**B. AIIA Adequately Pleads Indirect Infringement**

Defendants argue that AIIA's indirect infringement claims fail because (1) the direct infringement allegations are insufficient, and (2) the specific intent and no-substantial-noninfringing-use allegations are conclusory. Mot. at 18-22. Both arguments fail.

As demonstrated above, the FACs adequately plead direct infringement. Accordingly, the indirect infringement claims do not fail on that basis. *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022). The Federal Circuit in *Nalco* reversed the district court's dismissal of indirect infringement claims that had been dismissed solely because the direct infringement claims were dismissed: "We reverse the district court's dismissal of the indirect infringement claims insofar as it relied on failure to plead a direct infringement claim." 883 F.3d at 1355.



Fry Law Corporation Trial Attorneys

**1. AIIA Plausibly Alleges Induced Infringement**

To state a claim for induced infringement, the FACs must allege that Defendants had knowledge of the asserted patents and specific intent to encourage infringement. *See AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46-47 (Fed. Cir. 2024).

- **Knowledge:** Both FACs allege that Defendants received pre-suit demand letters identifying the Asserted Patents and the accused products. OSARO FAC ¶ 6; PD FAC ¶ 14. This is sufficient to plead knowledge. *See Entropic Communications, LLC v. Comcast Corp.*, 702 F. Supp. 3d 954, 965 (C.D. Cal. 2023) (demand letter identifying patents and accused products sufficient to plead knowledge). The Federal Circuit has confirmed that allegations of pre-suit notice satisfy the knowledge requirement for induced infringement. *See Nalco*, 883 F.3d at 1356 (The 4AC alleges facts that plausibly show Defendants specifically intended their customers to infringe the '692 patent, and that Defendants knew the customers' actions would constitute infringement.).
- **Specific Intent:** The FACs allege that Defendants provide *"detailed tutorials, user guides, and implementation resources"* that *"facilitate the use of the infringing features."* OSARO FAC ¶¶ 73, 75; PD FAC ¶ 105. These materials instruct customers on how to use Defendants' products in ways that infringe the Asserted Patents. This is not mere *"passing reference"* to product documentation; it is specific factual allegations that Defendants actively encourage infringing use. *Cf. Dolby Labs. Licensing Corp. v. Roku, Inc.*, No. 24-CV-04660-EJD, 2025 WL 2021803, at *10 (N.D. Cal. July 18, 2025).

**2. AIIA Plausibly Alleges Contributory Infringement**

To state a claim for contributory infringement, the FACs must allege that the accused product is not a staple article of commerce suitable for substantial noninfringing uses. *See Sonos*, 591 F. Supp. 3d at 647.

The FACs allege that Defendants' software modules *"implement each element of the*



Fry Law Corporation Trial Attorneys

*claimed methods,"* are *"exclusively designed and marketed for the infringing functionalities,"* and have *"no substantial non-infringing use."* OSARO FAC ¶¶ 74, 76-77; PD FAC ¶ 117. The FACs specifically identify features—such as SightWorks' synthetic data generation modules and Parallel Domain's virtual camera configuration tools—that are designed specifically for the patented processes. This is sufficient to plead contributory infringement. *See Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002).

### C. AIIA Adequately Pleads Willful Infringement

To plead willful infringement, a plaintiff must allege that the defendant had knowledge of the asserted patents and infringed deliberately or intentionally. *See Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2025 WL 754265, at *25-27 (N.D. Cal. Mar. 10, 2025). The FACs easily satisfy this standard.

- **Pre-Suit Knowledge:** The FACs allege that Defendants received demand letters identifying the Asserted Patents and specifically asserting infringement. OSARO FAC ¶ 6; PD FAC ¶ 14. This establishes pre-suit knowledge.
- **Deliberate Infringement:** The FACs allege that Defendants *"continued and expanded"* their infringing activities after receiving the demand letters, despite offers to license. OSARO FAC ¶¶ 20, 71, 78-80; PD FAC ¶¶ 115, 127. This post-notice conduct demonstrates the *"egregious"* behavior required under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 104 (2016).

Defendants' argument that the demand letters were insufficient to establish knowledge (Mot. at 19-20) is unavailing. The FACs allege that the letters specifically identified the Asserted Patents and the accused products. This is sufficient under *Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (letter must *"communicate a charge of infringement of specific patents by a specific group or group of products"*).

### D. Count IV Properly Seeks Injunctive Relief as a Remedy

Defendants argue that Count IV should be dismissed because *"a temporary injunction*



Fry Law Corporation Trial Attorneys

*is not an independent cause of action."* Mot. at 23. This mischaracterizes AIIA's pleading. Count IV does not assert an independent *"claim"*; rather, it details AIIA's entitlement to preliminary injunctive relief under 35 U.S.C. § 283 and Fed. R. Civ. P. 65, addressing each *eBay* factor with particularity. OSARO FAC ¶¶ 109-115; PD FAC ¶¶ 147-154.

Patent complaints routinely include detailed allegations supporting injunctive relief as a remedy. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926-30 (Fed. Cir. 2012). To the extent Defendants argue that *"Count IV"* should be treated as a standalone claim rather than a prayer for relief, the appropriate remedy is to construe the pleading properly, not to dismiss it. *See A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 737 (E.D. Cal. 2020).

**V. CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety. The FACs plausibly allege direct, induced, contributory, and willful infringement of the Asserted Patents based on detailed factual allegations derived from Defendants' own public disclosures. Defendants' technical arguments are factual disputes that cannot be resolved on a Rule 12(b)(6) motion.

The Federal Circuit's decisions in *Bot M8*, *Nalco*, and *Disc Disease* establish a clear and consistent standard: patent plaintiffs need not prove their case at the pleading stage, need not plead infringement on an element-by-element basis, and are entitled to plead upon information and belief when the defendant controls the relevant evidence. AIIA's FACs satisfy this standard with room to spare.

Discovery will further substantiate AIIA's claims by revealing Defendants' internal documents, source code, and technical specifications. The Motion should be denied, and this case should proceed to discovery. In the event the motions are granted, Plaintiff should be allowed an opportunity to amend the complaints to address any deficiencies.

///

///

///

Dated: January 8, 2026

Respectfully submitted,

**FRY LAW CORPORATION**

Christopher J. Fry, Esq.
*Counsel for Plaintiff*

Fry Law Corporation
Trial Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was served upon all parties of record in this action by the method(s) indicated below:

By electronic filing through the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered users

DATED: January 12, 2026

Respectfully submitted,

**FRY LAW CORPORATION**

By:________________________________
Christopher J. Fry, Esq.
*Attorney for Plaintiff*

Fry Law Corporation
Trial Attorneys