Brendan S. Cox (*pro hac vice*)
Laredo, Smith & Kane, LLP
101 Federal Street, Suite 650
Boston, Ma 02110
Telephone: (617) 443-1100
Facsimile: (617) 443-1174
Cox@Laredosmith.com

Bethany D. Bengfort (SBN 312507)
Thompson Hine LLP
155 Bovet Road, Suite 600
San Mateo, Ca 94402
Telephone: (650) 521-5930
Bethany.Bengfort@ThompsonHine.com

*Attorneys For Defendant*
*OSARO, Inc.*

Timothy Chen Saulsbury (SBN 281434)
Tsaulsbury@mofo.com
Gene Novikov (SBN 257849)
Gnovikov@mofo.com
Morrison & Foerster LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415 .268-7522

*Attorneys For Defendant*
*Parallel Domain, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,

Plaintiff,

v.

OSARO, INC.,

Defendant.

Case No. 3:25-cv-07170-PHK

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINTS**

Date: February 17th, 2026
Time: 1:30 p.m.
Place: Courtroom F, 15th Floor
Judge: The Honorable Peter H. Kang

ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.

Plaintiff,

v.

PARALLEL DOMAIN, INC.

Defendant.

Case No. 3:25-cv-07658-PHK

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The FACs Do Not Adequately Plead Direct Infringement .......... 1

1. AIIA fails to state a claim for direct infringement against OSARO .......... 4

a. AIIA fails to plausibly plead direct infringement of the ’272 patent .......... 4

b. AIIA fails to plausibly plead direct infringement of the ’693 and ’315 patents .......... 6

2. AIIA fails to state a claim for direct infringement against Parallel Domain .......... 7

a. AIIA fails to plausibly plead direct infringement of the ’272 patent .......... 7

b. AIIA fails to plausibly plead direct infringement of the ’693 patent .......... 11

c. AIIA fails to plausibly plead direct infringement of the ’315 patent .......... 12

B. AIIA Fails to Plausibly Plead Indirect Infringement .......... 14

1. AIIA fails to adequately plead the knowledge of infringement or specific intent required for induced infringement .......... 14

2. AIIA Fails to Plausibly Allege Contributory Infringement .......... 15

C. AIIA Fails to Plausibly Plead Willful Infringement .......... 16

D. AIIA Agrees that a Temporary Injunction is not an Independent Cause of Action .......... 17

III. CONCLUSION .......... 18

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216 (Fed. Cir. 2025) ... 9

*ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972 (N.D. Cal. 2023) ... 11

*Artrip v. Ball Corp.*, 735 F. App'x 708 (Fed. Cir. 2018) ... 16

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) ... 11

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) ... 2

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ... 2, 7

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293 (D. Del. 2019), *aff'd*, 813 F. App'x 584 (Fed. Cir. 2020) ... 3

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020) ... 4

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2020 WL 4431787 (N.D. Cal. July 31, 2020) ... 17

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034 (N.D. Cal. 2022) ... 2, 4, 6

*Digital Landscape Inc. v. Maui Jim USA, Inc.*, No. 21-1174, 2022 WL 507653 (C.D. Ill. Feb. 18, 2022) ... 9

*Dolby Lab'ys Licensing Corp. v. Roku, Inc.*, No. 24-CV-04660-EJD, 2025 WL 2021803 (N.D. Cal. July 18, 2025) ... 15

*Entropic Communications, LLC v. Comcast Corp.*, 702 F. Supp. 3d 954 (C.D. Cal. 2023) ... 14, 15

*Friends of the Earth v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2018 WL 10613016 (N.D. Cal. Sept. 11, 2018) ... 17

*Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357 (Fed. Cir. 2010) ... 16

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013)........................................ 3

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)........................................ 3

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015)........................................ 3

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
839 F. App'x 520 (Fed. Cir. 2021)........................................ 9

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)........................................ *passim*

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018)........................................ 9

*P2i Ltd. v. Favored Tech USA Corp.*,
No. 23-CV-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024)................. 14, 15, 16

*Polaris PowerLED Techs., LLC v. Nintendo Co.*,
623 F. Supp. 3d 1132 (W.D. Wash. 2022)........................................ 12

*QuickLogic Corp. v. Konda Techs., Inc.*,
618 F. Supp. 3d 873 (N.D. Cal. 2022)........................................ 5

*R.N. Nehushtan Tr. Ltd. v. Apple Inc.*,
No. 22-CV-01832-WHO, 2022 WL 2479837 (N.D. Cal. July 6, 2022)........................................ 9

*Regents of Univ. of Michigan v. Leica Microsystems Inc.*,
No. 19-CV-07470-LHK, 2020 WL 2084891 (N.D. Cal. Apr. 30, 2020)........................................ 9

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002)........................................ 3

*Ross v. Abbott Vascular Inc.*,
No. 19-CV-03794-JST, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022)........................................ 4

*SAP Aktiengesellschaft v. i2 Technologies, Inc.*,
250 F.R.D. 472 (N.D. Cal. 2008)........................................ 12

*Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*,
497 F. Supp. 3d 762 (N.D. Cal. 2020)........................................ 9

*Splunk Inc. v. Cribl, Inc.*,
662 F. Supp. 3d 1029 (N.D. Cal. 2023)........................................ 14

*Tigo Energy Inc. v. SunSpec All.*,
679 F. Supp. 3d 947 (N.D. Cal. 2023)........................................ 11

*UTTO Inc. v. Metrotech Corp.*,
119 F.4th 984 (Fed. Cir. 2024) ........ 8

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
No. 17-CV-03848-RS, 2017 WL 4551519 (N.D. Cal. Oct. 11, 2017) ........ 17

**Statutes**

35 U.S.C. § 271(c) ........ 15

**Other Authorities**

Fed. R. Civ. P. 8 ........ 2

Fed. R. Civ. P. 12 ........ 2

Fed. R. Civ. P. 12(b)(6) ........ 8

Fed. R. Civ. P. 15 ........ 11, 12

## I. INTRODUCTION

In an effort to avoid dismissal, Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA")'s opposition ("Opp.") to Defendants' Motion to Dismiss ("Mot.") substantially mischaracterizes both the complaints at issue and Defendants' motion.[1] It claims that the complaints contain non-conclusory allegations of infringement when they do not. It also references claim construction and fact disputes that no party has raised. And most peculiar of all, on at least three occasions, it "cites" allegations—complete with paragraph number pincites to the relevant FAC—that simply are not there.

AIIA's hollow gestures to phantom claim construction issues and supposed factual disputes cannot obscure its failure to plead a cogent set of facts that raise an inference of infringement. Both FACs should be dismissed for that main reason. AIIA's Opposition also highlights the boilerplate and conclusory nature of its attempts to plead indirect and willful infringement.

The OSARO FAC and PD FAC should be dismissed in their entirety.

## II. ARGUMENT

### A. The FACs Do Not Adequately Plead Direct Infringement

As set forth in Defendants' Motion, the FACs against both defendants fail to adequately plead direct infringement under operative Federal Circuit law and in accordance with cases from this District. AIIA relies heavily on *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), in which the Federal Circuit reversed a district court's dismissal of a complaint alleging infringement of a patent for a method of removing toxic mercury from the by-product of combustion in coal power plants. The complaint in *Nalco* incorporated detailed infringement contentions and set forth various alternative "ways in which Defendants control or direct the performance of the steps claimed in the [patent-in-suit], through commercial applications and through testing." *Id.* at 1345-46. The defendants in the case "d[id] not seem to challenge that

[1] As in their Motion, Defendants use "OSARO FAC" to denote the operative complaint against Defendant OSARO, Inc., Case No. 3:25-cv-07170-PHK, ECF No. 21, and "PD FAC" to denote the operative complaint against Defendant Parallel Domain, Inc., Case No. 3:25-cv-07658-PHK, ECF No. 26.

[the plaintiff] met the notice requirement of Fed. R. Civ. P. 8 or the pleading standard required under *Twombly* and *Iqbal*." *Id.* at 1347-48. Instead, the defendants attempted to controvert the plaintiff's explicit allegation about the correct construction of a claim term, arguing that because plaintiff's proposed construction was wrong, the detailed infringement allegations that the plaintiff presented were not plausible. *Id.* at 1349. The Court held that defendants were raising "classic *Markman* arguments . . . not suitable for resolution on a motion to dismiss." *Id.* The defendants also attempted to argue that the plaintiff's complaint was rendered fatally implausible by statements that the plaintiff had made before the Board of Patent Appeals and Interferences during a prior examination that supposedly narrowed claim scope. The Court likewise held that the correct interpretation of the plaintiff's statements to the Board was not appropriate for a Rule 12 motion. *Id.*

This case is not analogous to *Nalco*. Though AIIA's opposition attempts unsuccessfully to cast Defendants' motion as premised on claim construction disputes, it is in fact addressed to fundamental pleading deficiencies: a failure to raise a reasonable inference that either defendant infringes each limitation of every claim, whether because the complaint simply parrots the language of the asserted claims with no factual content alleged, fails to include allegations with respect to certain key claim elements altogether, or includes allegations that do not make sense. While there is no strict requirement that a complaint plead infringement on an element-by-element basis, the law is clear that a complaint must: (1) put the infringer on notice of what activity is being accused, and (2) raise a reasonable inference that the plaintiff is entitled to relief with more than mere "labels and conclusions" or the formulaic recitation of the elements of the claim. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021); *see also In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 (Fed. Cir. 2012) ("[T]here is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced."); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1042 (N.D. Cal. 2022) (explaining that, although an element-by-element analysis is not required, the patentee must provide "specific factual

allegations" as to the "critical elements" of the asserted claims in order to state a plausible claim for relief). As discussed in Defendants' motion and further below, AIIA fails to do either.

AIIA also suggests that it can cure any deficiencies in its respective complaints by alleging that the accused products perform the required claim elements "upon 'information and belief,'" relying primarily on *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013). Opp. at 6-7. AIIA is incorrect. As an initial matter, *K-Tech* analyzed its complaint under the pleading standard dictated by Form 18, which has since been abrogated. *See id.* at 1283 (explaining that complaints that comply with Form 18 are "effectively immunize[d] . . . from attack regarding the sufficiency of the pleading"); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. 2017) (explaining that "Form 18 was abrogated by the Supreme Court effective December 1, 2015" and that patent infringement complaints must now satisfy the *Iqbal/Twombly* pleading standards). Regardless, the Federal Circuit held in *K-Tech* that because the complaint recited other plausible allegations that the accused infringers' systems performed the required claim steps, the patent owner did not need to "point to the specific device or product within [the accused infringers'] systems that translates the digital television signals each receives" especially in view of the fact that it did not have access to that information. *K-Tech*, 714 F.3d at 1286-87. In other words, *K-Tech* did not permit the patentee to avoid the plausibility requirement by making generic allegations without any factual support.

AIIA cites other cases from the Third Circuit and Delaware that purportedly absolve it from meeting the pleading standards if it pleads "on information and belief," but those cases also do not do so. *See Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 299 (D. Del. 2019), *aff'd*, 813 F. App'x 584 (Fed. Cir. 2020) ("So long as plaintiffs do not use boilerplate and conclusory allegations and accompany their legal theory with factual allegations that make their theoretically viable claim plausible . . . pleading upon information and belief [is] permissible" (internal citations and quotation marks omitted)); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015) (noting only that some courts accept allegations "on information and belief" concerning facts peculiarly in the defendant's possession); *In re*

*Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (similar, while also noting that "courts are not required to credit bald assertions or legal conclusions"). Nor does this Court's law. *See Ross v. Abbott Vascular Inc.*, No. 19-CV-03794-JST, 2022 WL 20275185, at *8 (N.D. Cal. Mar. 3, 2022) (explaining that "courts sometimes credit allegations based on information and belief" but only "when there are *other* allegations that plausibly establish a sequence of events that point to infringement"); *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020) ("The inclusion of [the phrase 'information and belief'] creates an inference that [the claimant] likely lacks knowledge of the underlying facts to support the assertion[s], and is instead engaging in speculation to an undue degree." (internal citation and quotations omitted)).

### 1. AIIA fails to state a claim for direct infringement against OSARO

#### a. AIIA fails to plausibly plead direct infringement of the '272 patent

As AIIA acknowledges, the entire focus of the '272 patent is the creation of "synthetic image data" that can be used to "creat[e] training data sets for machine learning systems without the time and expense of manually collecting and labelling real-world images." Opp. at 7. That means that, at a bare minimum, AIIA must provide "specific factual allegations" that plausibly allege that SightWorks practices the "critical" claim elements related to the creation of synthetic image data. *See Cyph*, 642 F. Supp. 3d at 1042. The OSARO FAC does not come anywhere close to meeting this standard.

AIIA blithely asserts that the OSARO FAC "identifies specific features of SightWorks" that perform the critical claim elements, but does not identify or explain what those specific features are. Opp. at 11. Instead, AIIA block quotes the same conclusory allegations from the OSARO FAC that merely paraphrase the claim language and assert that SightWorks performs the recited functions. *Id.* The absence of specific factual allegations is evident when AIIA's allegations are compared with the actual claim language:

| Claim 17 Claim Element | AIIA Allegations (Opp. at 11) |
|---|---|
| receiving, by a processor, a database of background images, an object database including 3D models, a library of texture materials, a library of scene metadata, and a library of camera setting files; | The FAC alleges that SightWorks "imports or accesses all the necessary digital assets for synthetic scene creation: e.g. a repository of background images (warehouse scenes, etc.), a catalogue of 3D object models (items to place in scenes), texture libraries (surface visuals for realism), scene metadata files (defining scene parameters), and camera setting files (virtual camera parameters)." |
| constructing, by a computer graphics engine, a first synthetic image scene having an image scene class specified in a first scene metadata file, the constructing comprising: selecting a background image from the database of background images, wherein the background image is associated with the image scene class | The FAC alleges that SightWorks "use[s] a graphics engine to construct a synthetic 3D scene of a given type ('image scene class') as dictated by a scene metadata file," selecting "an appropriate background image from the library that corresponds to the specified class—for example, a warehouse backdrop for a 'warehouse' scene class." |
| placing, by an image projector, a virtual camera within the synthetic image scene, the virtual camera capturing a view of the first synthetic image scene . . .<br><br>incrementally varying at least one parameter included in the camera settings file . . . | The FAC alleges that SightWorks "places a virtual camera (with parameters loaded from a camera settings file) into the synthetic scene" and "renders a synthetic image of the scene from that perspective." |
| assembling synthetic images and the additional image data for the first and second synthetic image scenes in a training dataset associated with the image scene class, wherein the training dataset is used to train a machine learning system to perform a computer vision task. | The FAC alleges that SightWorks "assembles all the synthetic images and their additional data . . . into a training dataset labelled for that scene class, which is then used to train a computer vision model (e.g. a deep neural network for robotic perception)." |

As demonstrated above, AIIA's allegations "simply parrot the claim language" and "make no attempt to compare any of the claim limitations to the accused products" beyond "conclusory allegations" that the accused product performs the recited steps. *QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873, 884 (N.D. Cal. 2022). Critically, AIIA does not identify at all—much less with "specific factual allegations"—what SightWorks feature or functionality allegedly performs the claimed functions. At most, the allegations give a general, unsupported guess of *types* of elements that SightWorks might use without identifying where and how SightWorks actually uses them. For example, the allegations AIIA cites state that an example of

a "background image" SightWorks may use is a "warehouse scene." Opp. at 11. But AIIA does not provide any further context for how SightWorks actually performs the claim steps, or uses "warehouse scene" images to do so. *See id.* This is insufficient to state any claim for infringement, much less a "plausible" one. *See Cyph*, 642 F.Supp.3d at 1040.

Aside from repeating the conclusory allegations in the FAC, AIIA makes two arguments to avoid dismissal: (1) OSARO's statement that SightWorks "does not construct synthetic images" is a factual dispute; and (2) infringement is plausible because OSARO's marketing materials state that OSARO uses "deep learning technology" and "advanced vision systems." Opp. at 11. Both arguments fail.

As OSARO made clear in the motion, dismissal is required because AIIA has not *plausibly alleged* that SightWorks constructs synthetic images. That is not a factual dispute. AIIA has not pointed to *anything*—technology, marketing, or otherwise—that would even begin to create an inference that SightWorks uses synthetic images. AIIA's citations to OSARO's use of "deep learning technology" and "advanced vision systems" in no way create an inference that SightWorks uses synthetic images, as those terms are entirely generic and could describe a huge number of possible technologies. Indeed, "deep learning technology" and "advanced vision systems" could include systems that AIIA itself admits existed in the prior art. *See* Opp. at 7 (admitting that "machine learning systems" that used "real-world images" existed in the prior art). Because AIIA has failed to plead any factual allegations from which infringement can plausibly be inferred, its complaint must be dismissed.

**b. AIIA fails to plausibly plead direct infringement of the '693 and '315 patents**

For the '693 and '315 patents, AIIA does not deny that it has done no more than assert conclusory allegations that SightWorks performs the required claim steps. *Compare* Opp. at 12 ("For the '315 patent, the FAC alleges that SightWorks processes stereoscopic video sequences with embedded calibration information, extracts static and dynamic calibration data, and applies video stabilization to both left and right channels") *with* '315 patent, cl. 7 ("A method for processing a stereoscopic video, comprising: receiving a stereoscopic 3D video sequence

comprising an embedded calibration information . . . extracting calibration in at least two ways from the stereoscopic video sequence, a first way comprising extracting a static calibration information . . . a second way comprising extracting a time varying calibration information . . . applying [a] video stabilization operation on the portion of the video frames for both the left and right channels"). AIIA instead argues that it has nonetheless plausibly pleaded infringement because OSARO's website describes "advanced vision systems" that "process visual data" from multiple cameras. Opp. at 12.

This argument is clearly not sufficient and borders on absurd. There is nothing in the terms "advanced vision systems" or "visual data" that suggests the use of video (as opposed to single images), much less stereoscopic video, much less stereoscopic video that processes calibration data in the extremely specific way the claims require. AIIA is grasping at straws because it has no basis to allege infringement. The Court should reject its fishing expedition and dismiss the complaint.

### 2. AIIA fails to state a claim for direct infringement against Parallel Domain

#### a. AIIA fails to plausibly plead direct infringement of the '272 patent

The '272 Patent requires generating a "synthetic image" by, among other things, "selecting a background image from the database of background images and arranging the background image in a background portion of the synthetic image scene," "selecting a 3D model from the object database" and arranging it in the foreground, and "covering the 3D model with a texture material selected from the library of texture materials." Mot. at 2; FAC Ex. A ('272 patent) at claim 1. While AIIA is not required to plead detailed factual content supporting its allegations for each of these individual limitations, it does have to plead facts that raise "more than a sheer possibility" that it is entitled to relief for infringement of at least one claim. *Bot M8*, 4 F.4th at 1352.

The PD FAC fails to do this, but not because its allegations are insufficiently detailed, or because it applies the wrong claim construction. It fails because its allegations are divorced from the language of the claim altogether. In place of an allegation that Parallel Domain's technology

performs the step of "selecting a background image from the database of background images and arranging the background image in a background portion of the synthetic image scene," AIIA pleads that Parallel Domain "reconstructs simulation environments from image and video input," and that it "creat[es] background environments." Mot. at 12-13; PD FAC at Ex. D. And in place of an allegation that Parallel Domain performs the steps of "covering the 3D model with a texture material selected from the library of texture materials," the PD FAC pleads that Parallel Domain offers "technically infinite permutations through runtime color assignment and accessory variations." Mot. at 13; PD FAC at Ex. D.

In its opposition, AIIA raises three arguments with respect to the allegations in the PD FAC concerning the '272 Patent. ***First***, it argues that whether or not "creating background environments" meets the limitation of "selecting a background image from a database" is a claim construction issue inappropriate for resolution at the motion to dismiss stage, pointing to *Nalco*. Opp. at 12-13. Not so. As an initial matter, there is no categorical rule that courts may not engage in claim interpretation at the motion to dismiss stage; to the contrary, the Federal Circuit has made clear that the district court may, if it deems appropriate, construe the claims to the extent needed to resolve the motion. *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024) ("Some case-specific circumstances can make it improper for a district court to resolve a claim construction dispute in the context of adjudicating a Rule 12(b)(6) motion, but sometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed.").

Here, however, there is no reason to engage in any formal claim construction because AIIA has not raised any genuine claim construction dispute. Where a plaintiff seeks to avert dismissal for failing to plausibly allege infringement, it is insufficient simply to assert that the gap between what the claim says and what is alleged represents a claim construction dispute that must be deferred to a date months in the future. At a bare minimum, in order to prevail on such an argument, some combination of the complaint and patent must make it facially plausible that there is a claim construction that, if adopted, could support the claim of infringement. That was the case in *Nalco*, where the plaintiff made plausible allegations about the correct claim

construction that were necessarily accepted as true. *Nalco*, 883 F.3d at 1349. And it is the case consistently where courts hold that a disputed claim construction prevents resolution at the motion to dismiss stage. *See Adnexus Inc. v. Meta Platforms, Inc.,* 160 F.4th 1216, 1222 (Fed. Cir. 2025) (finding that a claim construction dispute may foreclose dismissal where there are competing constructions and "[b]oth parties point to various portions of the specification that arguably support their preferred interpretations"); *R.N. Nehushtan Tr. Ltd. v. Apple Inc.*, No. 22-CV-01832-WHO, 2022 WL 2479837, at *4 (N.D. Cal. July 6, 2022) (rejecting motion to dismiss arguments that "boil[ed] down to one primary issue: whether, according to the asserted claims, specific settings can *only* be changed while the device is in data mode. This is not evident from the plain language of the asserted claims. . . [r]ather, in making their points for and against their respecti[ve] reading of the claim language, the parties cite to the patents' abstracts and specifications."); *Regents of Univ. of Michigan v. Leica Microsystems Inc.*, No. 19-CV-07470-LHK, 2020 WL 2084891, at *8-9 (N.D. Cal. Apr. 30, 2020) (declining to dismiss where the plaintiff "identifie[d] language in the claims and in the specification to argue that the disputed limitation" was broad enough to cover the accused product). Where, on the other hand, a plaintiff's allegations fail to raise an inference of infringement under ***any*** plausible construction, courts do not hesitate to dismiss in the face of a bare assertion that claim construction is needed. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (affirming district court finding, on a motion to dismiss, that the asserted patent for a book holder "contains no claim that can be plausibly construed to cover a mobile camera device, a mounted camera, or any kind of camera"); *Digital Landscape Inc. v. Maui Jim USA, Inc.*, No. 21-1174, 2022 WL 507653, at *5 (C.D. Ill. Feb. 18, 2022) (granting motion for judgment on the pleadings where "the words [in the claim] are used in their commonly understood manner and Plaintiff has not offered any argument about what it believes are the proper interpretations of the disputed terms"); *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*, 497 F. Supp. 3d 762, 765–66 (N.D. Cal. 2020) (noting that while claim construction is not a matter for a motion to dismiss, "that does not require the Court to accept implausible claims"); *cf. Mortg. Application Techs., LLC v. MeridianLink, Inc.,* 839 F. App'x 520, 525 (Fed. Cir. 2021) (in the section 101 patent eligibility context, finding no error in

granting a motion to dismiss without claim construction where the non-moving party "did not raise any claim construction dispute and did not provide any proposed construction, but rather stated that the terms simply 'should be construed.'").

AIIA asserts that there's a claim construction dispute concerning whether its allegation that Parallel Domain "generates digital twins from real capture data, creating background environments 'nearly indistinguishable from the detail of the real world'" could meet the limitation "selecting a background image from the database of background images and arranging the background image in a background portion of the synthetic image scene." Opp. at 12-13. But AIIA proposes no claim construction that would support this argument and could bridge the gap between what the claim requires (selecting a background image from a database and arranging it in the scene) and what the complaint says Parallel Domain does (creating a simulated background environment from image capture data). AIIA may not avert dismissal by gesturing toward a phantom claim construction issue.

***Second***, AIIA states that "Parallel Domain's own public materials describe functionality that plausibly falls within the claims." Opp. at 13. It then quotes language supposedly coming from a "promotional video," citing to three paragraphs from the PD FAC (and nothing else) in support. *Id.* But neither the language it recites nor anything close appears in those paragraphs or anywhere else in the PD FAC. This cannot be a basis to sustain the claim.

***Third***, AIIA says that even if it has no claim for literal infringement of the '272 patent, it may nonetheless have a claim under the doctrine of equivalents. But AIIA ***does not assert the doctrine of equivalents*** for the '272 patent in the PD FAC. The paragraphs to which the opposition cites have no reference to the doctrine of equivalents. *See* PD FAC ¶¶ 74-77. Neither does the recitation of the count of infringement of the '272 patent. *Id.* ¶¶ 136-146. Nor does the claim chart for the '272 patent in Exhibit D. And AIIA's opposition offers no substantive argument or factual underpinning for how what Parallel Domain is alleged to do performs the same function, in the same way, to achieve the same result, as what the claim requires. As detailed in Defendants' Motion, bare conclusory allegations of infringement "literally or by equivalents" is insufficient to state a plausible claim. Mot. at 17. The case cited by AIIA in its

opposition supports Parallel Domain's position, not AIIA's. *See ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 981 (N.D. Cal. 2023) ("Plaintiff makes only a conclusory statement that Verkada infringes 'literally and/or under the doctrine of equivalents.' That conclusory allegation is insufficient when, as here, the literal infringement allegations rely on implausible claim construction or a claim construction that is fatally inconsistent with infringement."); *see also Tigo Energy Inc. v. SunSpec All.,* 679 F. Supp. 3d 947, 959 (N.D. Cal. 2023) ("Because [the plaintiff] has not plausibly alleged literal infringement," a conclusory recitation of the doctrine of equivalents was insufficient to assert a viable independent infringement theory at the pleadings stage).

AIIA's claim of infringement of the '272 patent against Parallel Domain should be dismissed.

**b. AIIA fails to plausibly plead direct infringement of the '693 patent**

Defendants' Motion pointed out that AIIA's claim chart exhibit, meant to bolster its allegations of infringement, charted a different "'693 patent" unrelated to the one asserted in the complaint. AIIA's opposition calls this a "typographical error" and claims that "[t]he allegations in the FAC itself adequately plead infringement of the correct patent." Opp. at 13-14. AIIA cites to nothing in the PD FAC to support this proposition and it is not accurate. As described in Defendants' Motion in greater detail, the '693 patent-specific allegations in the body of the PD FAC are virtually incomprehensible—but to the extent parts of them can be parsed, they seem to use terms pertaining to the ***other, unasserted*** '693 patent. Mot. at 15. They certainly do not recite facts that raise a reasonable inference of infringement of the asserted '693 patent, or put Parallel Domain on notice of what is being accused.

The remainder of AIIA's opposition with respect to the '693 patent seeks leave to amend. While it is true that Fed. R. Civ. P. 15 encourages leave to amend "when justice so requires," the Court's discretion to deny leave is "particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). The level of inattention required to attach claim charts asserting the wrong patent to an amended complaint is sufficient to permit the Court to conclude that Parallel Domain would be unduly prejudiced by

having to expend the time and resources required to respond to a third round of allegations.[2] The severity of AIIA's negligence here is underscored by the fact that the PD FAC was filed in response to a letter from Parallel Domain pointing out substantive deficiencies in the original complaint, and the fact that Parallel Domain advised AIIA of the obvious error well before filing its motion and received no response. Mot. at 6-7.

AIIA's claim of infringement of the '693 patent against Parallel Domain should be dismissed.

#### c. AIIA fails to plausibly plead direct infringement of the '315 patent

The '315 patent is directed to reducing distortion created by differences in the two channels of a stereoscopic recording device by embedding certain "3D calibration data" into the video feeds as they are captured. Mot. at 3-4. As relevant to Parallel Domain's motion, the claims require "embedding calibration information into the stereoscopic video sequence in a real time as the sequences of stereoscopic images are being recorded," including embedding "**inertial measurement data**" once per frame. *Id.* at 16-17. In combining the different channels of the stereoscopic video sequence, the claim further requires "extracting calibration information from multiple stereoscopic video sequences into each frame of a combined stereoscopic video sequence using a **video steganography process**." *Id.* at 16. As described in Parallel Domain's motion, the PD FAC omits allegations concerning "inertial measurement data" altogether. *Id.* at 16-17. And as to video steganography, the PD FAC only makes the conclusory assertion that Parallel Domain "us[es] techniques equivalent to steganography." *Id.* at 17.

With respect to "inertial measurement data," AIIA's opposition responds that "the FAC alleges that Parallel Domain's virtual camera system includes parameters equivalent to inertial

---

[2] AIIA's cited cases do not support the proposition that patent cases get some sort of special consideration with respect to liberality of amendment. *SAP Aktiengesellschaft v. i2 Technologies, Inc.*, 250 F.R.D. 472, 474-75 (N.D. Cal. 2008) merely noted that contentions deadlines under the Patent Local Rules do not trump the standard for leave to amend under Fed. R. Civ. P. 15. *Polaris PowerLED Techs., LLC v. Nintendo Co.*, 623 F. Supp. 3d 1132, 1139 (W.D. Wash. 2022) did not address leave to amend at all.

measurement data—specifically, the position, orientation, and motion parameters of the virtual camera." Opp. at 15. AIIA claims that this raises a "claim construction dispute" not appropriate for resolution in a motion to dismiss. *Id.* First, the allegation that parameters of Parallel Domain's "virtual camera system" are "equivalent to inertial measurement data" is absent from AIIA's complaint and claim chart, and so cannot be a basis for opposing Parallel Domain's motion. Second, even if this allegation were in the complaint, as discussed *supra* at 10-11 and in the Motion, boilerplate allegations of equivalence without some factual pleading concerning how the steps to be performed are equivalent in function, way, and result to what is recited in the claim are insufficient to withstand a motion to dismiss. Third, the claim requires the inertial measurement data to be embedded into a video sequence as it is being recorded by a "stereoscopic video recording device" which has "multiple image sensors"--clearly a physical device. *See also* PD FAC, Ex. C ('315 Patent) at 2:5-51 (describing physical stereoscopic video recording device). The specification makes clear that the "inertial measurement unit" that generates the inertial measurement data is also a physical device such as an accelerometer or gyroscope that can, for example, determine the head position and orientation of a user wearing the physical video recording device. *Id.* at 2:29-34, 8:49-51. And AIIA provides no proposed claim construction to support its implausible argument that the parameters of the virtual camera used in generating Parallel Domain's computer simulations can meet the "inertial measurement data" requirement in a patent directed to eliminating distortion from stereoscopic recordings using multiple video channels. As discussed *supra* at 8-10, a bare assertion of a latent claim construction dispute in the face of implausible allegations of infringement does not suffice to avert dismissal.

As to "video steganography," AIIA simply repeats the PD FAC's allegation that "Parallel Domain uses 'techniques equivalent to steganography for seamless metadata presentation.'" Opp. at 15 (citing PD FAC Ex. D at 5). As already discussed, a bare allegation of "equivalent" techniques, without even identifying the techniques much less explaining how they are equivalent in function, way, and result does not suffice to state a claim for patent infringement under the doctrine of equivalents.

AIIA's claim of infringement of the '315 patent against Parallel Domain should be dismissed.

### B. AIIA Fails to Plausibly Plead Indirect Infringement

#### 1. AIIA fails to adequately plead the knowledge of infringement or specific intent required for induced infringement

AIIA argues that it has satisfied the pleading requirements for the knowledge and specific intent elements of induced infringement because: (1) "[b]oth FACS allege that Defendants received pre-suit demand letters identifying the Asserted Patents and the accused products" and (2) the FACS allege "that Defendants provide 'detailed tutorials, user guides, and implementation resources' that 'facilitate the use of the infringing features.'" Opp. at 16. Neither argument is supported by law.

With respect to the alleged "pre-suit demand letters," AIIA does not dispute that its FACs fail to provide any details about their contents. AIIA has not plausibly alleged, for example, that the letters contained any analysis or assertion of infringement for specific products against claims in each of the asserted patents. That is required for a demand letter to plausibly allege knowledge of infringement. *See P2i Ltd. v. Favored Tech USA Corp.*, No. 23-CV-01690-AMO, 2024 WL 4294652, at *7 (N.D. Cal. Sept. 24, 2024) (holding that factual allegations regarding a "pre-suit letter" are insufficient to plead knowledge of infringement where the letter "does not analyze the patents or apply them to any product or method"); *see also Splunk Inc. v. Cribl, Inc.,* 662 F. Supp. 3d 1029, 1037 (N.D. Cal. 2023) (explaining that pre-suit knowledge may be established "through a cease-and-desist letter that calls out patent claims and how accused products infringe"). AIIA has no excuse for failing to provide these details, as *it was the one who allegedly sent the letters*.

Contrary to its argument, AIIA's cited cases do not suggest that conclusory allegations that a pre-suit notice letter exists are sufficient to plead knowledge of infringement. In *Entropic Communications, LLC v. Comcast Corp.*, the Court found that the patent owner *had not* adequately pled knowledge of infringement because the letter in question did not "identify any accused products in conjunction with any specific patent." 702 F. Supp. 3d 954, 965 (C.D. Cal. 2023). The Court noted that "the letter must communicate a charge of infringement of specific

patents by a specific product or group of products." *Id.* *Nalco* did not address a notice letter at all, instead finding that the complaint alleged other types of "facts that plausibly show . . . Defendants knew the customers' actions would constitute infringement." 883 F.3d at 1356. No such facts exist here.

AIIA next argues that its allegations that Defendants provide "detailed tutorials, user guides, and implementation resources" that "facilitate the use of the infringing features" are more than "passing reference[s]" to product documentation and are thus sufficient to establish specific intent to induce users to infringe the patents-in-suit. Opp. at 16. This argument again falls flat. AIIA's allegations, which "do not detail *how* the accused infringer's instructions would lead the end user to infringe," are exactly the type of allegations that courts have consistently found are insufficient. *Dolby Lab'ys Licensing Corp. v. Roku, Inc.*, No. 24-CV-04660-EJD, 2025 WL 2021803, at *10 (N.D. Cal. July 18, 2025). In *Dolby*, for example, the patent owner alleged that the accused infringer "encouraged users to infringe by disseminating marketing materials, providing user and technical manuals relating to the Accused Products, and other acts." *Id.* In *P2i*, the patent owner similarly alleged that the accused infringer induced infringement by "(1) providing instructions or information to explain how to use the GN Audio Products in an infringing manner (including, for example, at trade shows, via promotional videos, etc.); and (2) touting these infringing uses of the GN Audio Products in GN Audio's advertisements and/or other public content." 2024 WL 4294652, at *7. AIIA's FACs provide no more detail than these complaints, both of which were found to be insufficient by this Court.

**2. AIIA Fails to Plausibly Allege Contributory Infringement**

AIIA argues that it has plausibly pled contributory infringement because the respective FACs state that "Defendants' software modules 'implement each element of the claimed methods,' are 'exclusively designed and marketed for the infringing functionalities,' and have 'no substantial non-infringing use.'" Opp. at 16-17. These allegations, however, only recite the legal standards for contributory infringement and provide no supporting facts. *See* 35 U.S.C. § 271(c) ("Whoever offers to sell or sells . . . a component of a patented machine . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for

use in an infringement of such patent, and not . . . suitable for substantial noninfringing use, shall be liable as a contributory infringer."). That is insufficient to state a claim for contributory infringement. *See Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of contributory infringement claim that recited that the accused component was "especially adapted for infringement" and was not "suitable for substantial noninfringing use" because there were no facts to support these statements); *P2i*, 2024 WL 4294652, at *8 (similar).

AIIA also argues that its pleading is sufficient because it identifies specific features—namely, SightWorks' "synthetic data generation modules" and Parallel Domain's "virtual camera configuration tools"—that are "designed specifically for the patented processes." Opp. at 17. But AIIA's cited language does not actually reference any specific function or feature in the accused products. Rather, it points only to AIIA's own paraphrased characterizations of the claim language. And even if AIIA did actually identify a function or feature that existed in the accused products, it would still be insufficient, as AIIA has not pled any facts to support the contention that those features are specifically designed for the patented process, much less facts supporting any other required element of contributory infringement. AIIA has therefore failed to state a claim for either induced or contributory infringement.

### C. AIIA Fails to Plausibly Plead Willful Infringement

AIIA asserts that it has sufficiently pled willfulness because (1) its FACs assert that they sent pre-suit notice letters, which they say sufficiently alleges knowledge; and (2) its FACs allege that "Defendants 'continued and expanded' their infringing activities after receiving the demand letters," constituting "egregious" conduct. Opp. at 17.

As to the demand letters, all the FACs say is that "AIIA sent Defendant a formal demand letter identifying the Asserted Patents and asserting that Defendant's software products infringe one or more of its claims." OSARO FAC ¶ 6; PD FAC ¶ 14. This is insufficient to establish what is required to sustain a willfulness claim at the pleadings stage, which is that a pre-suit letter "communicate a charge of infringement of specific patents ***by a specific product or group of products.***" *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (emphasis added). An assertion that Plaintiffs accused "defendants' software products" generally

does not meet that requirement. *See Chrimar Sys. Inc. v. Ruckus Wireless, Inc.,* No. 16-CV-00186-SI, 2020 WL 4431787, at *7 (N.D. Cal. July 31, 2020) (laundry list of defendant's products and supposedly infringed patent claims insufficient to communicate a specific charge of infringement).

AIIA's "egregiousness" argument fares even worse because AIIA's opposition misrepresents the FACs. AIIA's quoted phrase "continued and expanded" appears nowhere in either FAC, including in the cited paragraphs.[3] The PD FAC contains no allegation that Parallel Domain "expanded" its allegedly infringing activities after receiving a pre-suit letter; it does allege that Parallel Domain "continued its infringement despite notice and offers to license," but that is not "egregious" conduct. PD FAC ¶¶ 123, 134, 145; *see also* PD FAC ¶ 111. *See XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-CV-03848-RS, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) ("knowledge and continued infringement" not "egregious" conduct for willfulness purposes). The OSARO FAC states that "Defendant has continued to promote and, upon information and belief, expanded sales of the accused products in California." OSARO FAC ¶ 6. Without any factual pleading to support this allegation it should be treated as mere speculation and disregarded. *See Friends of the Earth v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2018 WL 10613016, at *3 (N.D. Cal. Sept. 11, 2018) (where the bulk of a plaintiff's allegations on an issue are made on "on information and belief," this creates the inference that the plaintiff is "engaging in speculation to an undue degree," which cannot provide a factual basis to support the underlying claim).

AIIA's willful infringement claim should be dismissed.

### D. AIIA Agrees that a Temporary Injunction is not an Independent Cause of Action

AIIA agrees with Defendants that a temporary injunction is a remedy and not an

---

[3] The PD FAC paragraph cited in the opposition to support AIIA's claim are generic allegations of pre-suit knowledge that contain no mention of continued or extended activities. *See* PD FAC ¶¶ 115, 127. The OSARO FAC paragraphs cited in the opposition appear to be random numbers—paragraphs 20 and 71 are unrelated to knowledge and willfulness, while paragraphs 78-80 do not exist; the OSARO FAC ends at paragraph 73. *See* OSARO FAC at 23-24.

independent cause of action. Opp. at 17-18. AIIA argues instead that Defendants "mischaracterize[] AIIA's pleading" by interpreting it as one. *Id.* at 18. If AIIA did not intend for its temporary injunction to be treated as a cause of action, it should not have labeled it "Count IV" and styled it as one. *See* OSARO FAC ¶¶ 70-73; PD FAC ¶¶ 147-154. In any event, it appears that there is no real dispute between the parties on this point, and that both sides agree that if all other counts are dismissed, any count for a "temporary injunction" should be as well.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss both FACs in their entirety.

Dated: January 20, 2026

RESPECTFULLY SUBMITTED,

By: */s/ Bethany D. Bengfort*

Brendan S. Cox (pro hac vice)
Laredo, Smith & Kane, LLP
101 Federal Street, Suite 650
Boston, MA 02110
Telephone: (617) 443-1100
Facsimile: (617) 443-1174
cox@laredosmith.com

Bethany D. Bengfort (SBN 312507)
Thompson Hine LLP
155 Bovet Road, Suite 600
San Mateo, CA 94402
Telephone: (650) 521-5930
Bethany.Bengfort@ThomsponHine.com

*Attorneys for Defendant*
*OSARO, Inc.*

Timothy Chen Saulsbury (SBN 281434)
Tsaulsbury@mofo.com
Gene Novikov (SBN 257849)
Gnovikov@mofo.com
Morrison & Foerster, LLP
425 Market St.
San Francisco, Ca 94105
Telephone: (415) 268-6074

*Attorney for Defendant*
*Parallel Domain, Inc.*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)**

In accordance with Civil L.R. 5-1(i)(3), I attest that each of the other signatories have concurred in the filing of this document.

Dated: January 20, 2026

*/s/ Bethany D. Bengfort*
Bethany D. Bengfort