United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br>Plaintiff,<br>v.<br>OSARO, INC.,<br>Defendant. | Case No. 25-cv-07170-PHK<br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br>Re: Dkt. 34 |
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br>Plaintiff,<br>v.<br>PARALLEL DOMAIN, INC.,<br>Defendant. | Case No. 25-cv-07658-PHK<br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br>Re: Dkt. 31 |

These are two related patent cases filed by Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA") against Parallel Domain ("PD") and Osaro (collectively, "Defendants") asserting patent infringement causes of action against both Defendants. All Parties have consented to Magistrate Judge jurisdiction for all proceedings in both cases, including but not limited to entry of judgment and all necessary and ancillary Orders under 28 U.S.C. § 636(c). Now before the Court is the Defendants' motion to dismiss the First Amended Complaint (FAC). [-7170 Dkt. 34; -7658 Dkt. 31] (because the instant motion is a joint motion and essentially identical in both cases, for ease of reference the Court will refer herein to Dkt. 34 in the -7170 Osaro case with the understanding that the discussion applies equally to both cases unless noted otherwise for any specific issues which differ between the Defendants). The Court has reviewed all briefing and submissions of the Parties,

United States District Court
Northern District of California

including arguments presented at the hearing on this motion, and accordingly issues this Order resolving the motion to dismiss. For the reasons discussed herein, the Court **GRANTS** the motion to dismiss with leave to amend.

**BACKGROUND**

In the *Osaro* case, the original Complaint was filed on August 25, 2025. [-7170 case, Dkt. 1]. Defendant Osaro filed a motion to dismiss that Complaint on October 13, 2025. [-7170 case, Dkt. 15]. In response, on October 27, 2025, Plaintiff AIIA filed both an opposition to the motion to dismiss [-7170 case, Dkt. 22] and an Amended Complaint [Dkt. 21].

In the *PD* case, the original Complaint was filed on September 9, 2025. [-7658 case, Dkt. 1]. On November 4, 2025, the Parties filed a Stipulation re Amended Complaint which the Court approved on November 19, 2025. [-7658 case, Dkts. 22-23]. AIIA filed its First Amended Complaint against PD on December 4, 2025. [Dkt. 26].

Defendants filed the instant joint Motion to Dismiss their respective First Amended Complaints on December 29, 2025. [Dkt. 34]. AIIA filed is opposition on January 12, 2026. [Dkt. 36]. Defendants filed their reply briefs on January 20, 2026. [Dkt. 40]. The Court held a hearing on the instant motion on February 17, 2025. [Dkt. 43].

The respective First Amended Complaints assert patent infringement causes of action against both Defendants for U.S. Patents Nos. 9,930,315 ("the '315 patent"), 10,075,693 ("the '693 patent"), and 11,257,272 ("the '272 patent") (collectively, the "Asserted Patents"). As against Osaro, the First Amended Complaint alleges that Osaro infringes at least claim 7 of the '315 patent, at least claim 1 of the '693 patent, and at least claim 17 of the '272 patent. [-7170 case, Dkt. 21]. The First Amended Complaint attaches claims charts in which the infringement allegations are allegedly "detailed". *Id.* at 110-128 (Exhibit D to the FAC).

As against PD, the First Amended Complaint alleges that Osaro infringes at least claim 1 of the '315 patent, at least claim 1 of the '693 patent, and at least claim 1 of the '272 patent. [-7658 case, Dkt. 26]. The First Amended Complaint attaches claims charts in which the infringement allegations are allegedly "detailed". *Id.* at 121-129 (Exhibit D to the FAC).

The '315 patent is titled "Stereoscopic 3D Camera for Virtual Reality Experience." [Dkt.

21 at ¶ 21]. According to the FAC, the ‘315 patent is generally “directed to a method for recording and processing stereoscopic 3D video, comprising recording sequences of stereoscopic images by multiple image sensors, capturing motion data (e.g., gyroscopic or accelerometer data), estimating intrinsic data of the video capture device, applying transformations to remove undesired motion, and stabilizing the video for playback.” [Dkt. 21 at ¶ 30]. According to the FAC, “Osaro’s SightWorks software and associated robotic systems capture and process stereoscopic 3D video sequences using multiple image sensors, apply video stabilization operations, and utilize motion data (e.g., from gyroscopic or accelerometer sensors) to enhance robotic operations.” [Dkt. 21 at ¶ 31]. According to the PD FAC, “Parallel Domain’s simulation systems use stereoscopic cameras or 3D sensors for capturing and simulating depth-aware data, embedding sensor metadata (e.g., calibration, annotations) in real time during generation, and applying motion filtering and stabilization in their 3D-to-2D mapping processes.” [Dkt. 26 at ¶ 59].

The ‘693 patent is titled “Embedding Calibration Metadata Into Stereoscopic Video Files.” [Dkt. 21 at ¶ 19]. According to the FAC, the ‘693 patent is generally directed “to a computerized system for recording stereoscopic 3D video, comprising a computer store containing stereoscopic video feeds and contemporaneous metadata feeds, including calibration metadata, and a computer processor programmed to embed these metadata feeds into the stereoscopic video feed in real time, utilizing subtitle or closed captioning fields in the video file format.” [Dkt. 21 at ¶ 27]. According to the FAC, Osarao’s “SightWorks software and associated robotic systems capture and process stereoscopic 3D video feeds using multiple cameras, embedding calibration metadata such as camera intrinsic parameters and sensor data into the video files.” [Dkt. 21 at ¶ 28]. According to the PD FAC, “Parallel Domain’s synthetic datasets and simulation API generate frames from multiple virtual cameras, compute calibration data (extrinsics and intrinsics) to relate the cameras’ positions and orientations, and store that calibration metadata alongside the image data in a calibration folder.” [Dkt. 26 at ¶ 54].

The ‘272 patent is titled “Systems and Methods for Generating Labeled Image Data for Machine Learning Using a Multi-Stage Image Processing Pipeline.” [Dkt. 21 at ¶ 17]. According to the FAC, the ‘272 patent is generally “directed to a method for generating synthetic images,

comprising receiving databases of background images, 3D models, texture materials, scene metadata, and camera settings; constructing a synthetic image scene by selecting and arranging background images and 3D models; covering 3D models with texture materials; placing a virtual camera to capture a camera view; rendering the camera view as a synthetic image; and providing the synthetic image to a training dataset for machine learning." [Dkt. 21 at ¶ 24]. According to the FAC, "Osaro's SightWorks software and associated robotic systems generate synthetic image data, including stereoscopic images, for training machine learning models used in their robotic vision systems." [Dkt. 21 at ¶ 25]. According to the PD FAC, "Parallel Domain's systems include modules for assembling virtual scenes from 3D objects and real-world scans (digital twins), rendering synthetic images using camera settings (e.g., for high-fidelity camera simulation), augmenting with annotations, generating depth/optical flow via lidar/radar, and using the data to train ML models for computer vision tasks like perception in autonomous systems." [Dkt. 26 at ¶ 48].

## LEGAL STANDARDS

The well-known standard under Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the causes of action asserted in a complaint. A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or based on the absence of sufficient facts alleged under a cognizable legal theory. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011)).

In reviewing the sufficiency of a complaint, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109-10 (9th Cir. 2019) (citing *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action[.]'" *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In addition, Federal Rule of Civil Procedure 9(b) requires that causes of action grounded in fraud be pled "with particularity." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (explaining that if a claim relies on an alleged "unified course of fraudulent conduct," Rule 9(b) applies even if fraud is not a necessary element of the claim). "Because allegations of fraud inescapably carry a degree of moral turpitude, Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations and permitting a particularized basis for a defendant to respond to the particularized allegations." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021). To plead fraud with particularity, "the pleader must state the time, place, and specific content of the false representations as well as the identity of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference into the complaint, and matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)).

**ANALYSIS**

United States District Court
Northern District of California

**I. Direct Infringement**

To state a claim of patent infringement, "a plaintiff must allege that the defendant makes, uses, offers to sell, or sells the patented invention within the United States, during the term of the patent, and without authority of the patent holder." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1360 (Fed. Cir. 2019); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1249 (N.D. Cal. 1997). A plaintiff is not required to "to set out in detail the facts upon which he bases his claim;" instead, the complaint "need only plead facts sufficient to place the alleged infringer on notice." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). While a patentee need not plead infringement on an "element-by-element basis," in the complaint "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1324, 1352–53 (Fed. Cir. 2021).

A plausible claim for infringement "requires at least some factual allegations to support a plausible inference that the product at issue satisfies a claim limitation." *Estech Sys. IP, LLC v. Freshworks Inc.*, No. 24-cv-02525-EJD, 2025 WL 834494, at *3 (N.D. Cal. Mar. 17, 2025). Furthermore, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353. Precedent in the Northern District of California regularly grant dismissals of patent infringement complaints which merely identify an "expansive list of product types" without "identif[ying] a single product type and explain[ing] how this product incorporate[s] the allegedly infringing component." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-cv-05784-JST, 2020 WL 7392909, at *4 (N.D. Cal. July 23, 2020).

A complaint which fails to allege any facts tending to show how and why a Defendant infringes is subject to dismissal under Rule 12(b)(6). It is not enough for a complaint to merely go through each claim limitation and then conclusorily allege that those limitations are practiced by the Defendant. *SmartWatch MobileConcepts, LLC v. Google LLC*, No. 24-cv-00937-RFL, 2024 WL 2853966, at *1 (N.D. Cal. May 21, 2024) ("The factual allegations are insufficient to state a plausible infringement claim."); *People.ai, Inc. v. SetSail Techs., Inc.*, No. 20-cv-09148-WHA, 2021

WL 2333880, at *2–5 (N.D. Cal. June 8, 2021) (dismissing because "complaint does not address *why* it is plausible that [the accused product] uses the specific elements of the patent as claimed").

The Federal Circuit has provided guidance on when dismissal is appropriate and where dismissal is not appropriate. In *Nalco*, the Federal Circuit reversed dismissal, where the plaintiff lacked direct access to the defendant's manufacturing facility, holding that factual disputes about claim scope and technical operation are "not appropriate to resolve . . . on a Rule 12(b)(6) motion, without the benefit of claim construction." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018). However, the Federal Circuit has affirmed dismissal where the "complaint did not adequately explain *how* [the accused] products infringe the asserted patent claims." *Golden v. Qualcomm Inc.*, No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023).

AIIA's reliance on *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) is not legally persuasive, because that opinion relies at least in part on now-abrogated Form Complaint 18. *See* Dkt. 36 at 6; *see also* Peter H. Kang and Sue Wang, "Pleading Patent Infringement after Elimination of Form 18," ABA Section of Litigation – Minority Trial Lawyer, Winter 2016, Vol. 14, No. 2 (March 1, 2016), *available at* https://www.americanbar.org/digital-asset-abstract.html/content/dam/aba/publications/litigation_committees/minority/winter2016-mo.pdf.

AIIA's argument that it satisfies patent pleading standards by pleading "on information and belief", as done in parts of the claims charts attached to both FACs, is unpersuasive. [Dkt. 36 at 6]. First, as Defendants point out, AIIA relies on non-binding Third Circuit and Delaware law for legal support for this argument, and where that caselaw, in any event, does not categorically approve of "information and belief" pleading but rather allows such pleading where either "plaintiffs do not use boilerplate and conclusory allegations and accompany their legal theory with factual allegations that make their theoretically viable claim plausible" or where certain facts are peculiarly in the defendant's possession. *Compare id.*, *with* Dkt. 40 at 8. Further, as noted by Defendants, precedent from the Northern District of California allow "information and belief" pleading of patent infringement allegations in complaints "when there are other allegations that plausibly establish a sequence of events that point to infringement." *Ross v. Abbott Vascular Inc.*, No. 19-CV-03794-

JST, 2022 WL 20275185, at *8 (N.D. Cal. Mar. 3, 2022). "The inclusion of [the phrase 'information and belief'] creates an inference that [the plaintiff] likely lacks knowledge of the underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020) (internal citation and quotations omitted).

**a. '315 Patent – Direct Infringement**

Defendants argue that the FACs and the claims charts attached to each FAC fail to identify what in their accused products satisfy several claim terms and instead merely repeat the claim language and state conclusorily that the accused products have those limitations. Defendants argue that the Osaro FAC claims chart does not identify what features or portions of the accused products constitute the '315 patent's claimed "stereoscopic 3D video sequence", the "left right channels" of that 3D video, or what generates the claimed "video stabilization operation." Defendants further point out that the Osaro FAC claims chart for asserted '315 claim 7 repeats a summary of the functional language of the claim ("the Accused Products compute a video stabilization transform using both the left and right video channels") and, instead of stating how or why the accused Osaro product performs this claimed function, simply states "[t]his ***might involve*** calculating offsets/rotations needed to steady the view (using the extracted motion data and calibration)." [Dkt. 21 at 127 (emphasis added)]. The Court notes that the Osaro FAC claims chart uses this "might" language for other claim limitations with no explanation as to why this supposition is plausible. *Id.* at 125 ("SightWorks might merge two stereo video feeds into one stream"), 126 ("Osaro's system might use the GPU to scan each frame for encoded calibration bits").

AIIA's opposition brief addresses only a different issue (also raised by Osaro) as to whether or not the Osaro accused product captures video at all, and does not address these other deficiencies in the allegations argued by Defendants for the '315 patent. [Dkt. 36 at 12]. The Osaro FAC claims chart's allegation that Osaro's product "might" involve a particular type of calculation (or "might" use other features) does not address why that supposition is plausible and thus is facially speculative. *See Celgard*, 2020 WL 7392909, at *5 (granting dismissal because of "inference that [the plaintiff] likely lacks knowledge of the underlying facts to support the assertion, and is instead engaging in

speculation to an undue degree."); *see also People.ai*, 2021 WL 2333880, at *2–5 (granting dismissal where "complaint does not address *why* it is plausible that [the accused product] uses the specific elements of the patent as claimed").

With regard to the PD FAC, the asserted '315 patent claim requires "time varying calibration information comprising inertial measurement data." [-7658 Dkt. 26 at 118 ('315 claim 1)]. Defendants point out that the PD FAC claims chart completely omits discussion of any "inertial measurement data" in the accused PD product. At oral argument, AIIA admitted that there is no discussion of "inertial measurement data" in the PD FAC.

Further, Defendants point out that the PD FAC does not accuse PD of using an accelerometer (which could generate the claimed inertial measurement data). In response, AIIA argues that "Parallel Domain's virtual camera system includes parameters ***equivalent*** to inertial measurement data—specifically, the position, orientation, and motion parameters of the virtual camera." [-7658 Dkt. 36 at 15]. This assertion of infringement by equivalents is not stated in the PD FAC or claims chart but was only raised in briefing. Defendants argue that Plaintiff has not explained this apparent doctrine of equivalents argument anywhere. At oral argument, Plaintiff conceded that it could plausibly allege this apparent doctrine of equivalents theory in an amended complaint.

Similarly, '315 claim 1 requires "embedding calibration information using a video steganography process." [-7658 Dkt. 26 at 118]. Defendants point out that the PD FAC's claims chart conclusorily states that in the accused PD product "[c]alibration data is embedded directly into data stream using techniques ***equivalent to steganography***…." *Id.* at 126. Defendants argue that, other than stating this conclusory assertion of equivalence, AIIA's complaint has not even attempted to plead this apparent doctrine of equivalents argument further, either in the PD FAC or its claims chart. "[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention. A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially

the same result as each claim limitation of the patented product or method." *Nalco*, 883 F.3d at 1354 (citations omitted). Because the PD FAC is devoid of anything other than an assertion of the conclusion of equivalence, the FAC facially lacks plausible pleading of a doctrine of equivalents theory as to this "steganography" limitation in the '315 patent claim. At oral argument, Plaintiff did not deny that an amendment could afford AIIA the opportunity to plausibly allege this additional doctrine of equivalents theory.

The remainder of Defendants' arguments as to the '315 patent rely on either claim construction arguments or raise factual disputes as to the operation of the accused products. Because such disputes are inappropriate on a motion to dismiss, the Court does not reach such issues. *Nalco*, 883 F.3d at 1349-50.

As discussed above, there are a number of deficiencies in the pleading of infringement of the '315 patent as against both Defendants (even without resorting to disputes over claim construction or factual disputes over the accused products' functions and operation). For these reasons, the Court **GRANTS** Defendants' motion to dismiss with respect to the '315 patent infringement cause of action as to each Defendant. However, because AIIA has admittedly only asserted a doctrine of equivalents theory as against PD for multiple '315 patent claim limitations, AIIA is **NOT GRANTED LEAVE** to add a literal infringement theory in any amendment to the complaint asserted against PD.

**b. '693 Patent – Direct Infringement**

As an initial matter, the claims chart for the '693 patent attached to the PD FAC is, in reality, claims for a completely different patent, U.S. Patent No 10,**979**,693 (not the asserted "correct" '693 patent, U.S. Patent No. 10,**075**,693). *See* -7658 Dkt. 26 at 127. As noted, the three middle digits of these two patents differ – the asserted patent is the '**075**,693 patent, whereas the incorrectly referenced patent is the '**979**,693 patent. In briefing, Plaintiff acknowledges this error and expressly says it will seek leave to amend to file a corrected version of the complaint with the "correct" claims chart for the actually asserted '075,693 patent. [Dkt. 36 at 13-14]. PD argues that leave to amend should not be granted because the error demonstrates negligence and because amendment would unduly prejudice PD. [Dkt. 40 at 16-17]. At oral argument, AIIA confirmed it did not intend to

assert the wrong patent (U.S. Patent No. 10,**979**,693) and intends to assert the "correct" '075,693 patent. Given the policy favoring resolution of causes of action on the merits, dismissal with leave to amend is warranted and thus **GRANTED**. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors disposition of cases on the merits."). However, to be clear, the Court **DOES NOT GRANT** leave to amend to add the "wrong" patent (U.S. Patent No. 10, 979,693) to this case, based on Plaintiff's representations to the Court.

With respect to the Osaro FAC, Defendants argue that the FACs and the claims charts attached to each fail to identify what in their accused products satisfy several claim terms and instead merely repeat the claim language and state conclusorily that the accused products have those limitations. Defendants point out that the Osaro FAC claims chart does not identify what features or portions of the accused products constitute the '693 patent's claimed "robot", "stereo camera device", "video feed."

In opposition brief, AIIA argues that robots with "advanced vision systems" use multiple cameras. As noted, a complaint should "adequately explain *how* [the accused] products infringe the asserted patent claims." *Golden*, 2023 WL 6561044, at *2; *see also People.ai*, 2021 WL 2333880, at *2–5 (dismissing because "complaint does not address *why* it is plausible that [the accused product] uses the specific elements of the patent as claimed"). Here, the Osaro FAC and claims chart does not plead how or why a robot with an advanced vision system (even with multiple cameras) plausibly includes the claimed "stereoscopic video capture device" which includes a computer processor which "obtain[s] the stereoscopic video feed from the computer store" and then "embed[s], in real-time …, the stereoscopic video feed with the plurality of contemporaneous metadata feeds" (as claimed in asserted '693 claim 1). The Osaro FAC claim chart simply repeats the functions from the claim language (or slight variations on the claim language) and asserts that "Osaro's system is described as embedding calibration and sensor data into video files as they are captured" without explaining how or why this satisfies the claim language. While a complaint need not plead infringement on an element by element basis, the absence of allegations as to how and why the accused Osaro system allegedly satisfies so many claim limitations does not fairly provide Defendants notice of what they are accused of.

The remainder of Osaro's arguments rely on either claim construction arguments or raise factual disputes as to the operation of the accused product. Because such disputes are inappropriate on a motion to dismiss, the Court does not reach such issues. *See Nalco*, 883 F.3d at 1349-50.

As discussed above, there are a number of deficiencies in the pleading of direct infringement of the '693 patent as against both Defendants (even without resorting to disputes over claim construction or factual disputes over the accused products' functions and operation). For these reasons, the Court **GRANTS** Defendants' motion to dismiss with respect to the '693 patent infringement cause of action as to each Defendant, with leave to amend as discussed herein.

**c. '272 Patent – Direct Infringement**

As an initial matter, as noted the FAC against Osaro asserts infringement of '272 claim 17, whereas the claims chart attached to the FAC against PD alleges infringement of '272 claim 1 - but one part of the text of the FAC against PD mentions '272 claim 17. *See* Dkt. 34 at 9 n.2. At oral argument, AIIA clarified that AIIA is not asserting '272 claim 17 against PD (and the reference to claim 17 in the text of the PD FAC was a typographical error).

Further, in the opposition brief, AIIA argued that even if there were no claim of literal infringement of the '272 patent, then AIIA would still have an infringement claim under the doctrine of equivalents. [-7658 Dkt. 36 at 13 (citing PD FAC ¶¶ 74-77)]. Defendants point out in reply that neither FAC mentions the doctrine of equivalents at all with respect to the '272 patent (either in the text of the claims charts) and that the cited paragraphs of the PD FAC make no mention of the doctrine of equivalents (but rather discuss a Japanese customer of PD and PD's SDK (software development kit) and API's (application programming interfaces)). At oral argument, counsel for AIIA clarified that AIIA is not asserting infringement under the doctrine of equivalents for the '272 patent against these Defendants.

Similarly, in its opposition brief, AIIA argues that the infringement allegations for the '272 patent are adequate, in part, because (for the PD FAC) allegedly PD has a promotional video which "describe functionality that plausibly falls within the claims." [Dkt. 36 at 13 (citing PD FAC ¶¶ 63-65)]. In reply, Defendants point out that the cited paragraphs 63-65 of the PD FAC make no mention of any promotional video and do not have the language quoted by AIIA in their opposition brief

which allegedly comes from that unidentified video. [Dkt. 40 at 15]. At oral argument, counsel for AIIA did not deny errors in citing to those paragraphs of the PD FAC and errors in referring to the unidentified promotional video (and the quotations allegedly taken from that video).

Defendants argue that the FACs and the claims charts attached to each fail to identify what in their accused products satisfy several claim terms and instead merely repeat the claim language and state conclusorily that the accused products have those limitations. Defendants point out that AIIA's claims charts do not identify what features or portions of the accused products constitute the '272 patent's claimed "graphics engine", "synthetic 3D scene", "scene metadata file", "virtual camera", or "synthetic image scene." At oral argument, counsel for AIIA admitted that the claims charts are bare with regard to most if not all of these claim limitations.

In the opposition brief, AIIA argues that "deep learning" and "advanced systems" allegedly used by Defendants "rely on synthetic data generation for training." However, AIIA's FACs do not plead how or why deep learning and advanced systems plausibly rely on synthetic data generation, particularly in light of Defendants' argument that there are known prior art ways to use deep learning which need not necessarily rely on synthetic data generation. As noted, a complaint should "adequately explain *how* [the accused] products infringe the asserted patent claims." *Golden*, 2023 WL 6561044, at *2; *see also People.ai*, 2021 WL 2333880, at *2–5 (dismissing because "complaint does not address *why* it is plausible that [the accused product] uses the specific elements of the patent as claimed"). While a complaint need not plead infringement on an element by element basis, the absence of allegations as to how and why "deep learning" and "advanced systems" allegedly satisfy so many claim limitations does not fairly provide Defendants notice of what they are accused of.

The remainder of Defendants' arguments rely on either claim construction arguments or raise factual disputes as to the operation of their accused software products. Because such disputes are inappropriate on a motion to dismiss, the Court does not reach such issues.

As discussed above, there are a number of deficiencies in the pleading of literal direct infringement of the '272 patent (without resorting to disputes over claim construction or factual disputes over the accused products' functions and operation). For these reasons, the Court **GRANTS** Defendants' motion to dismiss with respect to the '272 patent direct infringement cause

of action as to each Defendant, with leave to amend. However, based on AIIA's representations, Plaintiff is **NOT GRANTED LEAVE** to add a doctrine of equivalents infringement theory under the '272 patent against Defendants in any Second Amended Complaints.

**II. Indirect Infringement**

Indirect infringement includes induced infringement and contributory infringement. "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To establish induced infringement, a plaintiff must show direct infringement by a third party, and must also show that "the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lock, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) (superseded on other grounds)). "Liability [for induced infringement] under § 271(b) requires knowledge that the induced acts constitute patent infringement." *In re Bill of Lading*, 681 F.3d at 1339. In addition, "the specific intent necessary to induce infringement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *Boundaries Sols. Inc. v. CoreLogic, Inc.*, No. 5:14-CV-00761-PSG, 2014 WL 4954017 at *3 (N.D. Cal. Sept. 29, 2014)

A party is liable for contributory patent infringement if that party sells or offers to sell, within the United States, material that is part of a patented invention, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use." 35 U.S.C. § 271(c). To establish contributory infringement, a plaintiff must show "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). The knowledge requirement focuses on "knowledge, not intent, that [t]his activity cause[s] infringement." *Lifetime Indus.*, 869 F.3d at 1381. The knowledge requirement for contributory infringement and inducement are the same. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). A plaintiff must also show that "the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading*, 681 F.3d at 1337 (explaining that the

"inquiry focuses on whether the accused products can be used for purposes other than infringement").

In the FACs, AIIA has failed to plead sufficient facts necessary to support either a claim for induced or contributory infringement. Specifically with regard to induced infringement, Plaintiff does not plead facts establishing that Defendants knew their alleged acts of inducement constituted patent infringement as to any of the Asserted Patents. Knowledge of infringement and intent to induce infringement are required to prove induced infringement. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003); *see also Lashify, Inc. v. Urban Dollz LLC*, No. CV 22-6148-GW-AFMX, 2022 WL 18278638 at *3 (C.D. Cal. Dec. 13, 2022).

Plaintiff generally references a cease and desist letter allegedly sent to each Defendant. Each FAC simply makes the conclusory allegation that Plaintiff sent a "demand letter" at some unknown date to each Defendant (without attaching a copy of those demand letters or quoting from them). *See, e.g.*, Dkt. 21 at ¶ 6; Dkt. 26 at ¶ 14. However, Plaintiff does not describe the contents of the demand letters and neither FAC attaches a copy of the letters. Plaintiff does not plead that, based on the cease and desist letters, Defendants knew of their infringement of the Asserted Patents and then, after learning of their infringement, intended to induce infringement through specific acts of inducement.

In briefing, Osaro disputes receiving any alleged demand letter and disputes that its business address is the address pled in the FAC (and thus argues that, if AIIA sent the demand letter to that address, then Osaro would not have received it because that is not its business address). Factual disputes are not proper to resolve on a motion to dismiss. *See Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 945 (N.D. Cal. 2015) ("This, however, is a factual dispute which is improper on a motion to dismiss."). However, even taking these allegations about the demand letters as true for purposes of the instant motion (as the Court must), at best the pleading demonstrates that Defendants had knowledge of the patents-in-suit at some time prior to suit.

As noted, knowledge of the patents alone is insufficient to plead inducement of infringement. AIIA makes no specific factual allegations about either Defendant's subjective intent, or any other aspects of their behavior that would suggest they had the necessary specific intent to induce the

infringement. Instead, the FACs posit that inclusion of certain accused features in the accused products or in providing "guidance" or "tools and instructions for customers" is the same as "specifically encourag[ing] others to practice this [patent claim] element (inducement)." *See, e.g.*, Dkt. 21 at 112. This is not sufficient plausible pleading of inducement of infringement because the FACs collapse the intent for a customer to use a product with the legally required intent to induce another to infringe the patent.

Here, AIIA relies on its allegations of knowledge and infringement but those allegations are not enough to plausibly allege intent to induce infringement. *See Lifetime Indus.*, 869 F.3d at 1379 ("For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent") (internal quotation marks, alterations, and citation omitted). For example, pleading that a defendant published user manuals and support articles for the accused products (similar to AIIA's allegations here regarding providing "tools" and "support" to customers using the accused products) has been held as "wholly inadequate for an inference of specific intent" to induce patent infringement. *Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*, No. 5:25-CV-05725-BLF, 2026 WL 800129 at *7 (N.D. Cal. Mar. 23, 2026). Even under Rule 9(b)'s liberal standard, the FACs fail to plead sufficiently that Defendants had the requisite intent for inducement of infringement and thus failed to state a claim for induced infringement.

With regard to contributory infringement, Plaintiff does not adequately plead facts plausibly suggesting that either Defendant sold products that have no substantial non-infringing use. Such facts are required to support a claim for contributory infringement. *See, e.g., U.S. Philips Corp. v. Int'l Norcent Tech.,* No. 2:06-CV-01366-ER-PLA, 2007 WL 4984156, at *2 (C.D. Cal. Oct. 17, 2007) (explaining that "there can be liability for contributory infringement if the defendant sells products that have no substantial non-infringing uses"*); see also Lashify*, 2022 WL 18278638 at *4. Other than stating in conclusory fashion that unidentified "modules" in the accused products have no substantial non-infringing use, the FACs do not clearly explain or plead what those different "modules" are or why they have no substantial non-infringing use. Under the applicable legal standard, the FACs do not plead plausibly how or why the "modules" within the accused products

United States District Court
Northern District of California

have no substantial non-infringing use (other than the circular assertion that these "modules" appear designed to implement the claimed patented features, which is merely another way of saying that these "modules" infringe the patent claims). Under *Twombly/Iqbal*, the FACs fail to plead sufficiently that Defendants' accused products have no substantial noninfringing use for contributory infringement and thus failed to state a claim for contributory infringement.

Accordingly, Defendants' motion to dismiss the indirect infringement claims in each FAC is **GRANTED WITHOUT PREJUDICE**. To the extent Plaintiff believes it has sufficient evidence to support pleading claims of induced infringement and/or contributory infringement, Plaintiff may file a Second Amended Complaint in each case **by October 30, 2026**.

### III. Willful Infringement

Generally, to prove willful infringement, a plaintiff must show that an infringer has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or ... characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-104 (2016). "Willfulness does not equate to fraud," however, so "the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b)." *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003). "To willfully infringe a patent, a patent must exist and one must have knowledge of it." *Led Wafer Sols. LLC v. Samsung Elecs. Co.*, No. 22-CV-04809-AMO, 2026 WL 1738113, at *3 (N.D. Cal. June 16, 2026) (citing *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed.Cir.1985)). "Whether an act is willful is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510–511 (Fed. Cir. 1990). "Hence a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge. Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of a suit." *Id.* at 511.

The complaint does not contain sufficient factual allegations to make it plausible that Defendants engaged in "egregious" conduct that would warrant enhanced damages under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 110 (2016). Each FAC simply makes the

conclusory allegation that Plaintiff sent a "demand letter" at some unknown date to each Defendant (without attaching a copy of those demand letters or quoting from them). *See, e.g.*, Dkt. 21 at ¶ 6; Dkt. 26 at ¶ 14. In briefing, Osaro disputes receiving any alleged demand letter and disputes that its business address is the address pled in the FAC (and thus argues that, if AIIA sent the demand letter to that address, then Osaro would not have received it because that is not its business address). Factual disputes are not proper to resolve on a motion to dismiss. *See Nasseri*, 147 F. Supp. 3d at 945. However, even taking these allegations about the demand letters as true for purposes of the instant motion (as the Court must), at best the pleading demonstrates that Defendants had knowledge of the patents-in-suit at some time prior to suit.

As noted, knowledge of the patents alone is insufficient to plead willful infringement. AIIA makes no specific factual allegations about either Defendant's subjective intent, or any other aspects of their behavior that would suggest their behavior was "egregious." Instead, the FACs posit that inclusion of certain accused features in the accused products or in marketing materials (post-the demand letter dates) after receiving knowledge of the Asserted Patents is "a classic case of *willful* infringement." *See, e.g.*, Dkt. 21 at 118. Similarly, the FAC alleges that implementing the accused features into the Accused Products "despite knowledge of the patent, reflect[s] *reckless disregard* for the claimed invention (evidence of willfulness)." *See, e.g., id.* at 112. This is not sufficient plausible pleading of willfulness because the FACs collapse the knowledge requirement with the intent requirement.

Here, AIIA relies on its allegations of knowledge and infringement but those allegations are not enough to plausibly allege "egregious[ness]." *Cf. Halo*, 579 U.S. at 111 (Breyer, J., concurring). Because AIIA "has failed to make sufficient factual allegations that ... [Defendants'] behavior was 'egregious ... beyond typical infringement,' it has failed to state a claim for willful infringement." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss the willful infringement allegations in their respective FACs **WITH LEAVE TO AMEND**.

### IV. Lost Profits

Among other requests for relief, the FACs here seek "damages of at least $100 million for Defendant's infringement, including lost profits". *See* Dkt. 21 at 14; Dkt. 26 at 24. Defendants argue that the FACs lack "plausible allegations that it [AIIA] makes products that practice the patents." [Dkt. 34 at 13 (citing *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015) ("if the patentee is not selling a product, by definition there can be no lost profits"))].

Whether lost profits are legally available is a question of law. *See Mitutoyo Corp. v. Cent. Purchasing, LLC,* 499 F.3d 1284 (Fed. Cir. 2007). "To recover lost profits, a patent owner must prove 'a causal relation between the infringement and its loss of profits.' More specifically, the patentee must show 'a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales.'." *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369 (Fed. Cir. 2003) (citations omitted).

Defendants argue that the FACs contain no plausible pleading (indeed, any pleading at all) that AIIA could have made Defendants' allegedly infringing sales. [Dkt 34 at 13]. While Defendants go outside the pleadings to argue AIIA's recent corporate formation (and imply that AIIA is a non-practicing entity), the Court limits its review to the allegations in the FACs. Even charitably reading the FACs, the pleadings here are devoid of any allegations as to the causal relation between the alleged infringement and AIIA's lost profits. *See Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("It is true that the recovery of lost profits by a patentee is not limited to the situation in which the patentee is selling the patented device. However, the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits."). Indeed, at oral argument, AIIA was unable to proffer a compelling theory of lost profits recovery here. While the Court does not hold Plaintiff to an evidentiary standard for pleading entitlement to lost profits, the Ninth Circuit has made clear that a pleading's averments as to lost profits damages are subject to Rule 12(b)(6) review. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 n.2 (9th Cir. 2010). Applying the *Twombly/Iqbal* plausibility standard to the lost profits pleadings here, the complete absence of even a conclusory allegation as to the causal relationship issue renders the FACs here subject to dismissal as to lost profits.

Nevertheless, the Court **GRANTS** Defendants' motion to dismiss the lost profits allegations here **WITH LEAVE TO AMEND** if AIIA believes it has an appropriate basis to plead a plausible theory for lost profits.

The Court notes that the PD FAC also includes a request for an award of ***Defendant's*** profits (not Plaintiff's lost profits) for alleged "copyright infringements" and under 35 U.S.C. § 289. [Dkt. 26 at 34]. As noted, this is a patent lawsuit, not a copyright case. Unlike under the Copyright Act, a defendant's profits is not awardable as damages under the Patent Act. *See Robert Bosch, LLC v. Pylon Mfg. Corp.,* 719 F.3d 1305, 1309 n.1 (Fed. Cir. 2013) (en banc) ("An infringer's profits are, of course, no longer an available remedy for the infringement of a utility patent."). Further, Section 289 of the Patent Act relates to an award of a Defendant's profits in a ***design patent*** case. This is a case involving ***utility patents***, not design patents. It is clear, taking the PD FAC as a whole, that these are typographical errors and are immaterial under Rule 12(f). The Court exercises its discretion under Rule 12(f) to **STRIKE** the request for damages from the PD FAC in the form of an award of Defendant PD's profits. *See* Fed. R. Civ. P. 12(f). Alternatively, the Court **DISMISSES WITH PREJUDICE** the request for damages in the form of Defendant PD's profits as implausibly pled under Rule 12(b)(6) **WITHOUT LEAVE TO AMEND** because it would be futile to try to amend a request damages constituting an award of Defendant's profits in this utility patent case.

**V. "Cause of Action" for Temporary Restraining Order**

Both FACs assert, as a separate "count" or cause of action, a claim for a "Temporary Injunction". [Dkt. 21 at 22; Dkt. 26 at 31]. A request for a preliminary injunction is not a cause of action but rather is a request for a form of injunctive relief. At oral argument, AIIA admitted that these are requests for a form of relief and not a separate legal cause of action.

There are separate procedures for seeking a preliminary injunction. *See* Civil L.R. 7-2, 65-2. To the extent the FACs assert these requests as a "Count" they are **DISMISSED WITHOUT PREJUDICE**. In any amended complaints filed in response to this Order, AIIA **SHALL** include all requests for relief in its Prayer for Relief, and not as a cause of action.

**CONCLUSION**

Accordingly, for all the reasons discussed herein, **IT IS ORDERED THAT:**

United States District Court
Northern District of California

1. Defendants' motion to dismiss [-7170 case Dkt. 34; -7658 case Dkt. 31] is **GRANTED-IN-PART WITHOUT PREJUDICE** and **GRANTED-IN-PART WITH PREJUDICE** as detailed herein.
2. Plaintiff is **GRANTED** leave to file a Second Amended Complaint in each of these cases, subject to the limitations discussed herein. Plaintiff is **ORDERED** to file its Second Amended Complaint in both cases **on or before October 30, 2026**.

This Order **RESOLVES** Dkt. 34 in the Osaro case (-7170) and Dkt. 31 in the PD case (-7658).

**IT IS SO ORDERED.**

Dated: September 30, 2026



PETER H. KANG
United States Magistrate Judge