BARBARA N. BARATH (SBN 268146)
CHRISTOPHER J. WIENER (SBN 280476)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email: ef-bnb@cpdb.com
ef-cjw@cpdb.com

*Attorneys for Defendant,*
FANUC AMERICA CORPORATION

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OSARO, INC.,<br><br>Defendant. | Lead Case No. 3:25-cv-07170-PHK<br><br>**FANUC AMERICA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>*THIS DOCUMENT RELATES TO:*<br>** Case No. 3:26-cv-00860-PHK* |
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PARALLEL DOMAIN, INC.,<br><br>Defendant. | Date: December 10, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom F, 15th Floor<br>Judge: The Honorable Peter H. Kang<br><br>Case No. 3:25-cv-07658-PHK |
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FANUC AMERICA CORPORATION,<br><br>Defendant. | Case No. 3:26-cv-00860-PHK |

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 • FAX 415.989.1663

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 10, 2026 at 1:30 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Peter H. Kang, located in the Phillip Burton Federal Building & United States Courthouse at 450 Golden Gate Avenue, San Francisco, California 94102, FANUC America Corporation ("FANUC") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint filed by Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Barbara N. Barath ("Barath Declaration" or "Barath Decl."), the proposed order, the pleadings and papers on file in this action, and all matters of which the Court may take judicial notice.

## STATEMENT OF THE RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), FANUC seeks an order from the Court dismissing AIIA's Complaint in its entirety with prejudice. In particular, FANUC seeks to dismiss: (1) AIIA's first claim for infringement of U.S. Patent No. 11,257,272 and (2) AIIA's second claim for a preliminary injunction.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION....1

II. STATEMENT OF ISSUES TO BE DECIDED....2

III. FACTUAL BACKGROUND....2

A. The Asserted Patent....2

B. AIIA's First Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement....3

C. AIIA's Second Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement....4

D. AIIA's Third Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement....4

E. The Court's September 30, 2026 Order....5

F. AIIA's Fourth Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement....6

IV. LEGAL STANDARD....6

V. The '272 Patent Is Invalid Under Section 101....7

A. Claim 17 Is Representative....8

B. *Alice* Step One: Claim 17 Is Directed to the Abstract Idea of Collecting and Manipulating Stored Image Components to Create New Images....8

1. The claim recites a long-standing practice performed on a computer....8

2. The Federal Circuit has held that analogous claims are abstract....9

3. The claim does not recite a technological solution to a technical problem....10

C. *Alice* Step Two: Claim 17 Recites No Inventive Concept....12

VI. The Complaint Fails to Plead Infringement, a Cause of Action for "Preliminary Injunction," or Entitlement to Lost Profits....13

A. AIIA Fails to State a Claim for Indirect Infringement....13

1. AIIA Fails to Adequately Plead Knowledge....14

2. AIIA Fails to Plead Any Underlying Act of Direct Infringement....14

3. AIIA fails to state a claim for contributory infringement....16

a. FANUC's robot arm is not a material part of the claimed method. ....17

b. Services, demonstrations, and marketing are not "components," "materials," or "apparatus." ....17

c. AIIA does not plausibly allege that FANUC's robot arm lacks substantial non-infringing uses. ....18

d. FANUC's robots are not especially designed for use in infringement. ....19

4. AIIA fails to state a claim for induced infringement. ....19

B. AIIA Fails to State a Claim for Willful Infringement. ....21

C. The Complaint Fails to Plausibly Allege Entitlement to Lost Profits. ....22

D. The Court Should Dismiss AIIA's Preliminary Injunction Claim. ....22

E. The Court Should Dismiss the Complaint with Prejudice. ....22

VII. CONCLUSION ....24


COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
491 F. Supp. 3d 727 (E.D. Cal. 2020) ... 24

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
No. 19-cv-05903-JST, 2020 WL 6129139 (N.D. Cal. Sep. 9, 2020) ... 18

*ALD Social, LLC v. Verkada, Inc.*,
654 F. Supp. 3d 972 (N.D. Cal. 2023) ... 18

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 8

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ... 7, 8, 14

*Coop. Entm't, Inc. v. Kollective Tech., Inc.*,
No. 5:20-CV-07273-EJD, 2024 WL 420747 (N.D. Cal. Feb. 5, 2024) ... 14, 19

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) ... 11

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
No. 22-CV-00561¬ JSW, 2022 WL 1556417 (N.D. Cal. May 17, 2022) ... 10

*Dolby Lab'ys Licensing Corp. v. Roku, Inc.*,
No. 24-CV-04660-EJD, 2025 WL 2021803 (N.D. Cal. July 18, 2025) ... 22, 23

*Estech Sys. IP, LLC v. Ooma, Inc.*,
770 F. Supp. 3d 1228 (N.D. Cal. 2025) ... 8, 10, 11, 20

*Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010) ... 23

*Golden v. Google LLC*,
No. 2024-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025) ... 19, 20

*Golden v. Intel Corp.*,
No. 2023¬1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) ... 14, 17

*Golden v. Qualcomm Inc.*,
No. 2023-1818, 2023 WL 6561044 (Fed. Cir. Oct. 10, 2023) ..... 10

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.*,
No. 24-CV-02220-JST, 2025 WL 754265 (N.D. Cal. Mar. 10, 2025) ..... 20, 23

*House v. Gen. Elec. Co.*,
No. 2025-1294, 2025 WL 2972670 (Fed. Cir. Oct. 22, 2025) ..... 13

*Huang v. Amazon.com, Inc.*,
No. 2024-1428, 2025 WL 314718 (Fed. Cir. Jan. 28, 2025) ..... 19

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
677 F. Supp. 3d 1079 (N.D. Cal. 2023) ..... 22

*Metricolor LLC v. L'Oreal S.A.*,
791 Fed. App'x 183 (Fed. Cir. 2019) ..... 14, 18

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ..... 14

*P2i Ltd. v. Favored Tech USA Corp.*,
No. 23-CV-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ..... 20, 21, 23

*Ramos v. Chase Home Fin.*,
810 F. Supp. 2d 1125 (D. Haw. 2011) ..... 24

*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-CV-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ..... 24

*Shamoon v. City of San Antonio*,
No. SA-18-CV-00718-XR, 2025 WL 1356399 (W.D. Tex. Apr. 30, 2025) ..... 18

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022) ..... 19, 20, 22

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
208 F.3d 981 (Fed. Cir. 2000) ..... 16

*Warsaw Orthopedic, Inc. v. NuFasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015) ..... 6

**Statutes & Rules**

L.R. 11-4(a)(4) ..... 15

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

AIIA does not allege that FANUC, a robotic systems seller, directly infringes U.S. Patent No. 11,257,272 (the "'272 patent"). Instead, AIIA alleges that FANUC indirectly infringes and that its liability "depends upon" direct infringement "by OSARO and/or third parties who deploy the FANUC-Osaro integrated solution." (ECF No. 1 ("Compl.") ¶ 28.)

AIIA's claims fail at every level and for many of the same reasons that this Court recently dismissed AIIA's claims against OSARO, Inc. ("OSARO") and Parallel Domain, Inc. ("Parallel Domain") in related actions. *AIIA v. OSARO, Inc.* ("OSARO Action"), No. 25-CV-07170-PHK, 2026 WL 2970375 (N.D. Cal. Sept. 30, 2026) ("OSARO Action"); *AIIA v. Parallel Domain, Inc.*, No. 3:25-cv-07658-PHK (N.D. Cal. Sept. 9, 2025) ("Parallel Domain Action"). AIIA does not plausibly allege any element of its indirect infringement claim. It does not sufficiently allege either knowledge of infringement, or direct infringement for FANUC to contribute to or induce. Its allegations here are even weaker than those the Court found insufficient in the related actions; it makes no attempt to map the accused solution to the twelve-step method recited in the only asserted claim. As to contributory infringement, the only component FANUC supplies—a robot arm—plays no part in the claimed method; it thus cannot be a material component of the invention and undisputedly has substantial non-infringing uses. As to induced infringement, AIIA pleads that FANUC promoted the ***use*** of the accused solution; it does not plausibly allege that FANUC intended to induce ***infringement***. The Complaint's remaining allegations—willful infringement, lost profits, and a "Count" for a preliminary injunction—mirror allegations this Court has already dismissed in the related actions. Because AIIA has already had at least four opportunities to cure these defects, the Court should dismiss the Complaint with prejudice.

Dismissal with prejudice is also appropriate on an independent ground that the Court has not yet considered: the '272 patent claims are ineligible under 35 U.S.C. § 101 because they are directed to the abstract idea of collecting and manipulating image components to create new images.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss the Complaint in its entirety because the '272 patent does not claim patent eligible subject matter and is invalid under 35 U.S.C. § 101.

Whether the Court should dismiss Count I of AIIA's Complaint because AIIA has not plausibly pleaded a sufficient legal or factual basis for induced or contributory infringement of the '272 patent.

Whether the Court should dismiss AIIA's allegations of willful infringement because AIIA has not pleaded a sufficient factual or legal basis for a finding of willfulness.

Whether the Court should dismiss AIIA's allegations that it is entitled to lost profits because AIIA has not pleaded a sufficient factual or legal basis for entitlement to such damages.

Whether the Court should dismiss Count II of AIIA's Complaint because a request for a preliminary injunction is not a cognizable cause of action.

Whether dismissal should be with prejudice because AIIA has already had at least four opportunities to amend.

## III. FACTUAL BACKGROUND

### A. The Asserted Patent

The '272 patent is directed to the creation of "synthetic" images that can be used in training data sets for machine learning. (*See* '272 patent at Title ("Generating Synthetic Image Data for Machine Learning"); *Id*. at Abstract ("Synthetic image datasets generated by the systems and methods described herein are used to train machine learning systems . . .").) The '272 patent contends that there are problems associated with the "conventional" approach of using "real" or "manually captured" images in training data sets, including that those images are "scarce" (even with "the amount of photographs available online"), and thus may be difficult to acquire. (*Id*. at 2:05-51, 3:47-60, 5:50-54, 7:40-42.) The patent provides a method of "creat[ing] training data sets comprising synthetic images generated using automated processes. (*Id*. at 2:39-51.)

AIIA asserts only claim 17. (Compl. ¶¶ 21, 32.) Claim 17 is a method claim, every step of which is performed in software. It requires (1) receiving libraries of image components and instructions; (2) building a first "synthetic image scene" by selecting a background image;

(3) adding 3D models; (4) adding a "texture material" and using a "virtual camera" to capture a camera view; (5) varying camera settings to provide a "first series of camera views"; (6) tracking the coordinates of the virtual camera for each camera view; (7) rendering image data at each camera view; (8-11) repeating the process for a second "synthetic image scene"; and (12) assembling the results into a training dataset for a machine learning system. ('272 patent cl. 17.) Claim 17 does not mention robotic hardware.

AIIA has filed complaints asserting the '272 patent against eight companies.[1] In one case, AIIA's claims were dismissed for lack of standing because the inventors had not signed the initial assignment in the chain of title at the timing of filing. *See Geisel*, ECF No. 38. AIIA voluntarily dismissed its claims in three actions. *See Elementary Robotics*, ECF No. 33 (dismissal after motion to dismiss on Section 101 issues was fully briefed); *MVision AI*, ECF No. 21 (same); *Ceres AI*, ECF No. 31 (dismissal after amended complaint). The three related actions before this Court and a declaratory judgment action brought by Plus One Robotics in the Western District of Texas remain.

### B. AIIA's First Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement

In the OSARO Action, AIIA accused SightWorks—the same software at issue here—of directly infringing claim 17, and accused OSARO of inducing, contributing to, and willfully infringing the '272 patent and other patents not asserted here. OSARO Action, ECF No. 1. On October 13, 2025, OSARO filed a motion to dismiss the complaint, arguing that AIIA's original complaint did not make any factual allegations as to how the accused products infringed the '272 patent. *Id.*, ECF No. 15. Additionally, OSARO and Parallel Domain both sent AIIA letters explaining in detail why AIIA's allegations were inadequate. *Id.*, ECF Nos. 34-7, 34-9.

---

[1] *See AIIA v. Geisel Software, Inc.*, No. 1:25-cv-07387-PKC (S.D.N.Y. Sept. 5, 2025) ("*Geisel*"); *AIIA v. Ceres AI, Inc.*, No. 5:25-cv-07924-NC (N.D. Cal. Sept. 17, 2025) ("*Ceres AI*"); *AIIA v. Elementary Robotics, Inc.*, No. 2:25-cv-08297-HDV-E (C.D. Cal. Sept. 3, 2025) ("*Elementary Robotics*"); *PlusOne Robotics, Inc. v. AIIA*, No. 5:25-cv-01197-OLG-HJB, ECF No. 9 (W.D. Tex. Oct. 15, 2025); *AIIA v. MVision AI, Inc.*, No. 5:25-cv-01370 (W.D. Tex. Oct. 24, 2025) ("*MVision AI*").

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

### C. AIIA's Second Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement

On October 27, 2025, AIIA filed an amended complaint ("FAC") in both matters. OSARO Action, ECF No. 21 ("OSARO FAC"); Parallel Domain Action, ECF No. 26 ("Parallel FAC"). Each FAC included a claim chart that recited each limitation of the asserted patents. OSARO FAC at Ex. D; Parallel FAC at Ex. D. Parallel Domain then sent an additional letter to AIIA explaining why AIIA's allegations remained inadequate notwithstanding the amendments. OSARO Action, ECF No. 34-10. AIIA did not amend to address any of the issues. OSARO and Parallel Domain subsequently filed a joint motion to dismiss. *Id.* ECF No. 34.

### D. AIIA's Third Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement

On January 27, 2026, after the joint motion was fully briefed, AIIA filed its complaint against FANUC. The Complaint asserts a "Count I: Induced and Contributory Infringement" of claim 17 of the '272 patent and a separate "Count II: Preliminary Injunction." (Compl. at 11, 13.) It seeks injunctive relief and damages, including "lost profits." (*Id.* ¶¶ 2, 37 & Prayer ¶ C.)

As AIIA admits, "FANUC America is not the developer or seller of [the accused OSARO] software[.]" (Compl. Ex. A at 1.) The Complaint alleges:

> FANUC has actively induced and contributed to any such infringement by: (1) integrating Osaro's software with FANUC's M10iD/12 six-axis robot arm and other robotic systems; (2) installing demonstration systems featuring the integrated FANUC-Osaro solution at FANUC's Innovation Center in Rochester Hills, Michigan to actively promote the technology to prospective customers; (3) conducting joint marketing efforts including press releases and co-demonstrations at major trade shows such as PACK EXPO 2022 and ProMat 2023; (4) directing FANUC's Authorized System Integrator ("ASI") network to deploy Osaro's software with FANUC robotic systems; and (5) publicly endorsing the collaboration through statements by FANUC General Manager James Cooper, who stated: "Our collaboration with OSARO enables us to showcase the latest automation technologies for fulfillment operations. We look forward to working together with OSARO and our ASIs to help customers in the warehousing sector achieve their production goals."

(*Id.* ¶ 1; *see also id.* at ¶¶ 23, 26, 33.) The Complaint does not attach a claim chart. It makes no effort to establish how OSARO's SightWorks software or use thereof infringes the '272 patent.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 • FAX 415.989.1663

On March 3, 2026, the Court related this action to the OSARO and Parallel Domain Actions. (ECF No. 20.)

On April 9, 2026, FANUC sent AIIA a 12-page letter outlining the issues with its complaint. (*See* Barath Decl., Ex. 1.) AIIA did not amend to address any of those issues.

On May 11, 2026, the Court ordered that FANUC's response to the Complaint would be due 30 days after the Court ruled on OSARO and Parallel Domain's joint motion to dismiss the FACs in the related actions. (ECF No. 23.)

### E. The Court's September 30, 2026 Order

On September 30, 2026, the Court granted the joint motion to dismiss. *OSARO*, 2026 WL 2970375, at *12. *First*, the Court held that AIIA had not plausibly alleged that SightWorks practices claim 17. AIIA's claim charts did not "identify what features or portions of the accused products constitute the '272 patent's claimed 'graphics engine', 'synthetic 3D scene', 'scene metadata file', 'virtual camera', or 'synthetic image scene[,]'" and AIIA did "not plead how or why deep learning and advanced systems plausibly rely on synthetic data generation, particularly in light of Defendants' argument that there are known prior art ways to use deep learning which need not necessarily rely on synthetic data generation." *Id.*, at *7–8. The Court also held, in addressing AIIA's claim chart for another asserted patent, that allegations that an accused product "might" perform a claimed function are "facially speculative," *id.*, at *5, and that "information and belief" pleading is permissible only '"when there are other allegations that plausibly establish a sequence of events that point to infringement,"' *id.*, at *4 (citation omitted).

*Second*, the Court held that AIIA failed to plead induced infringement. AIIA's allegations that defendants provided "guidance" or "tools and instructions for customers" "collapse the intent for a customer to ***use*** a product with the legally required intent to induce another to ***infringe*** the patent." *Id.*, at *8–9 (emphasis added).

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

*Third*, the Court held that AIIA failed to plead contributory infringement because it did not plausibly explain "how or why" the accused components "have no substantial non-infringing use." *Id.*, at *10.

*Fourth*, the Court dismissed AIIA's willfulness allegations because allegations of post-notice continuation of the accused conduct "collapse the knowledge requirement with the intent requirement." *Id.*, at *11.

*Fifth*, the Court dismissed AIIA's lost-profits demand for failure to allege any causal relationship between the alleged infringement and any lost profits. *Id.*

*Sixth*, the Court dismissed AIIA's "Count" for a temporary injunction because such a request "is not a cause of action." *Id.*, at *12.

The Court granted AIIA leave to file second amended complaints by October 30, 2026. *Id.*

### F. AIIA's Fourth Opportunity to Accuse SightWorks Software and Sufficiently Plead Indirect Infringement

On October 5, 2026, FANUC sent AIIA another letter noting that AIIA's complaint against FANUC suffers from the same defects as those raised in the Order. (Barath Decl., Ex. 2.) FANUC asked AIIA to dismiss its complaint and—in the alternative—offered to stipulate to AIIA amending its complaint to address the deficiencies raised in the Court's Order to "avoid wasting both parties' and the Court's resources briefing and arguing a motion to dismiss on issues that the Court has already decided." (*Id.* at 1.) AIIA declined to dismiss or amend. (*Id.*, Ex. 3.)

## IV. <u>LEGAL STANDARD</u>

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual [allegations], accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* "Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action[.]'" *Somers v. Apple,*

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

*Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). '"Factual allegations must be enough to raise a right to relief above the speculative level."' *Id.* (quoting *Twombly*, 550 U.S. at 555). '"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."' *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## V. **The '272 Patent Is Invalid Under Section 101.**

Patent eligibility is a question of law that may be resolved on a Rule 12(b)(6) motion. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016). The Supreme Court's two-step *Alice* framework governs the Section 101 inquiry. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). At *Alice* Step One, the Court determines whether the claims are directed to a patent ineligible concept, such as an abstract idea. *Id.* To determine whether claims are abstract, courts compare the claims at issue to those previously found to be abstract. *Silver State Intellectual Techs. v. Facebook Inc.*, 314 F. Supp. 3d 1041, 1046 (N.D. Cal. 2018). Courts also consider whether the claims are "directed to a mental process or a process that could be done with pen and paper." *Id.* (internal citations and quotation marks omitted). Courts may consider whether the claims have an analogy in the non-computer context, such that they cover a fundamental, long-prevalent practice. *See Alice*, 573 U.S. at 219. Courts also look to whether the claims "purport to improve the functioning of the computer itself"; applying an abstract idea using some generic computer "is not '*enough*' to transform [the] abstract idea into a patent-eligible invention." *See id.* at 225–26 (emphasis in original and citation omitted).

If the claims are directed to an abstract idea, then at *Alice* Step Two, the court determines whether the claim elements, both individually and as an ordered combination, supply an "inventive concept" that transforms the claim into a patent-eligible application. *Id.* at 217. "Such a transformation, however, requires more than just the recitation of the abstract idea followed by the words 'apply it,'" and "simply adding a generic computer to an otherwise abstract concept . . ." cannot save the patent from ineligibility. *OpenTV, Inc. v. Apple Inc.*, No. 5:15-CV-02008-EJD, 2016 WL 344845, at *4 (N.D. Cal. Jan. 28, 2016) (citing *Alice*, 573 U.S. at 221, 223). Elements that involve only "well-understood, routine, [and] conventional activity" previously known in the

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

industry do not suffice. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (citation omitted). The Court "need not accept a patent owner's conclusory allegations of inventiveness." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022).

**A. Claim 17 Is Representative.**

Claim 17 is representative because all claims are '"substantially similar and linked to the same abstract idea."' *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citation omitted). Claim 17 is the most detailed independent claim; independent claims 1 and 13 recite subsets of the same receive-assemble-capture-collect process, with immaterial variations such as a second "virtual camera" to capture synthetic image data. The dependent claims add immaterial variations on elements of claim 17: camera settings (claims 2, 12, 14-16), camera position data (claim 3), background image (claim 4), "image effects" (claims 6-7), organization of image data (claim 8-11, 18), and use of the machine learning system (claim 5). AIIA itself agreed that claim 17 is representative in prior litigation. *See Elementary Robotics*, ECF No. 27 at 13. If claim 17 is ineligible, the remaining claims necessarily are as well.

**B. *Alice* Step One: Claim 17 Is Directed to the Abstract Idea of Collecting and Manipulating Stored Image Components to Create New Images.**

**1. The claim recites a long-standing practice performed on a computer.**

Claim 17 is directed to the abstract idea of collecting image components (e.g., background images, 3D models, and texture materials), using various camera settings and other parameters to manipulate the image components and create new images, and tracking information about those images. That is a fundamental, long-prevalent practice; each claim step is analogous to a non-computer, manual counterpart. For instance, the "scene metadata file" with "instructions" is a shot list or storyboard. ('272 patent at 51:7-14.) Selecting a background, "populating" the foreground with objects, and "covering" them with a texture is akin to building and dressing a set. (*Id.* at 51:9-23.) Placing a camera with "position data," "intrinsics," "camera calibration settings," and "capture settings" is analogous to selecting a camera, positioning it, and setting its zoom and focus. (*Id.* at 51:27-28; *see also id. at* 41:54-57 ("camera capture settings 540 include a zoom

setting 741, focus setting 742, baseline setting 743, convergence plane depth setting 744, lighting 745"), 42:9-11 (calibration settings 530 define the image plane of a virtual camera within a scene), Figs. 5-7.) "[I]ncrementally varying" a camera parameter to obtain "a series of camera views" is shooting the subject from a sequence of positions or zoom settings. (*Id*. at 51:25-31.) "[R]endering projection coordinates" is tracking the location of the camera for each shot. (*Id*. at 51:33-35.) "[R]endering additional image data" is adding more information about the images like depth. (*Id*. at 52:1-3, 20:20-29.) Building a second scene of the same "image scene class" and shooting it from "the same position and direction" is changing the set and reshooting from the same tripod marks. (*Id*. at 52:4-16.) And "assembling" the results "in a training dataset associated with the image scene class" is filing the photographs by category. (*Id*. at 52:24-26.) Indeed, the '272 patent concedes that image datasets were conventionally built by "rely[ing] on manual steps performed by a photographer." (*Id*. at 4:23-24, 5:50-54.) Claim 17 performs the same steps with a generic graphics engine. It is well-settled that "mere automation of manual processes using generic computers[,]" such as the steps described in claim 17, "does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

**2. The Federal Circuit has held that analogous claims are abstract.**

The Federal Circuit has found similar claims as the '272 patent abstract. For instance, in *AI Visualize v. Nuance Commc'ns, Inc.*, the Federal Circuit held ineligible claims that, like the '272 patent, stored image data in a database and processed it to "create" three-dimensional "virtual views[,]" or virtual images. 97 F.4th 1371, 1375 (Fed. Cir. 2024). The Federal Circuit described the claims in *AI Visualize* as involving the steps of: "*storing* data (VVD) on a server, *accepting* user requests to view a portion of that data (virtual views), *checking* for the location of all data needed for the virtual view, '*creating*' image frames from any non-locally-stored virtual view data, *transmitting* all nonlocally-stored image frames to the user, *compiling* all image frames, and sequentially *displaying* the image frames to the user." *Id.* at 1378 (emphasis in original). According to the Federal Circuit, these claims recited the abstract idea of "converting data and using computers to collect, manipulate, and display the data," and "the claimed step of creating a



COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

virtual view is itself an abstract idea." *Id.* at 1378, 1380.

Other Federal Circuit decisions also confirm that claims for image manipulation, creation, and organization like those recited in the '272 patent are abstract. *See, e.g.*, *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357–58 (Fed. Cir. 2023) (claims directed to a method of receiving, displaying, converting, storing, and transmitting images are abstract despite asserted technical solution); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1324 (Fed. Cir. 2017) ("method for creating a composite image" is abstract); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612–13 (Fed. Cir. 2016) (recording, classifying, and storing digital images is abstract); *Zillow*, 50 F.4th at 1380 (organizing and displaying visual information is abstract).

**3. The claim does not recite a technological solution to a technical problem.**

The '272 patent itself confirms that it solves a non-technical problem (*i.e.*, a scarcity of images) by automating a manual process using a computer. It explains that "[d]espite the amount of photographs available online, image data for training [computer vision] CV networks is scarce." ('272 patent at 2:19-20.) It contends that, although "large amounts of 2D RGB images" are available and "open source databases of stereo images" exist, more images as well as more variety in "type of subject matter" is required. (*Id.* at 2:20-33.) It explains that an existing solution to this problem was that "datasets for training stereo CV models are captured using expensive and time consuming manual processes." (*Id.* at 2:33-34.) The patent thus purports to fulfill the "need in the field of CV to create training data sets comprising synthetic images generated using automated processes." (*Id.* at 2:39-41.) The Federal Circuit has repeatedly confirmed that exactly this type of method is patent ineligible: "claimed methods are not rendered patent eligible by the fact that (using existing machine learning technology) they perform a task previously undertaken by humans with greater speed and efficiency than could previously be achieved." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025); *see also Zillow*, 50 F.4th at 1380 ("While the claimed methods may speed up th[e] organizational process by using a computer, they do not recite an improvement in any computing technology.").

In prior litigation, AIIA argued that the '272 patent "focus[es] on a technological solution"

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

of "using 3D rendering engines to simulate real-world variations (e.g., lighting, defects) with automatic labeling, enabling efficient AI training without manual data collection." (*Elementary Robotics*, ECF No. 27 at 14.)[2] But the specification confirms that the claimed "rendering engines" were conventional and well-known. ('272 patent at 15:31-32 ("[v]irtual scenes may be assembled using a graphics rendering engine (e.g., Blender or Unity)").) The claims thus recite doing what humans have long done with physical cameras using conventional computer components.

AIIA's next argument—that the patent recites a "specific technical method comprising" an "ordered combination of technical steps that work together to achieve a particular technological result" of "produc[ing] training data that accurately reflects real-world imaging conditions"—fares no better. (*See MVision AI*, ECF No. 13 at 4-6.) First, the fact that the claims recite each step of how one may go about applying the abstract idea (collecting and manipulating image components to create new images) in a specific technological environment does not make the claims any more patent eligible. "'Do it on a computer' is 'do it on a computer,' even when a draftsman takes the time to describe the doing in great detail." *Dental Monitoring SAS v. Align Tech., Inc.*, No. C 22-07335 WHA, 2024 WL 2261931, at *5 (N.D. Cal. May 16, 2024), *aff'd*, No. 2024-2270, 2026 WL 1959297 (Fed. Cir. July 7, 2026) (citation omitted).

Further, there is no dispute that the '272 patent claims recite no improvement to the machine learning model itself. (*See* '272 patent at 1:52-2:4, 8:49-9:3) (identifying known machine learning methods).) The Federal Circuit has made clear that "[g]eneric use of AI without other parameters, such as 'improving the mathematical algorithm or making machine learning better,' is abstract." *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 2024-1725, 2026 WL 506661, at *3 (Fed. Cir. Feb. 24, 2026) (quoting *Recentive*, 134 F.4th at 1213). "[P]atents that do no more than claim the application of generic machine learning to new data environments, without disclosing improvements to the machine learning models to be applied, are patent ineligible under § 101." *Recentive*, 134 F.4th at 1215–16.

---

[2] No court has decided a Section 101 challenge to the '272 patent because AIIA has voluntarily dismissed its complaint in actions where defendants filed Section 101 motions.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

The fact that the claim recites producing training data does not save it. Courts have held similar claims directed to the creation of training data patent ineligible. *See, e.g.*, *Arkose Labs Holdings, Inc. v. DataDome*, No. 23-01467-RGA, 2025 WL 1885692, *7 (D. Del. July 8, 2025) ("Claim 1 states that the 'normal' and 'abnormal' data sets are to be used as a 'training data set for training a model for an anomaly detection monitor for the target user,' but fails to disclose either a step of training the model or any method for doing so" and was thus directed to an abstract idea); *Dental Monitoring*, 2024 WL 2261931, at *5 (claim requirements that "images in the learning base be 'images of dental arches,' that they represent 'an aligner work by a 'historical patient' and 'compris[e] one or more zones each representing a tooth,' that a 'tooth attribute value is assigned,' and so forth" were "not *improvements* to the training or operation of deep learning devices" but rather "field-of-use limitations describing the configuration of a deep learning device to perform the abstract idea at issue in the field at issue") (citations omitted and emphasis in original). In sum, the claims disclose no technical improvement sufficient to transform an abstract idea into a patent-eligible invention.

### C. *Alice* Step Two: Claim 17 Recites No Inventive Concept.

The claims of the '272 patent recite no inventive concept. Claim 17 recites only generic components that were well-understood, routine, and conventional by the time of the claimed invention. The specification points to a general-purpose processor ('272 patent at 9:61-10:3), 3D models (*id.* at 28:19-24), graphics engines (*id.* at 15:31-32), image projectors (*id.* at 18:2-14), virtual cameras (*id.* at 8:22-27, 18:17-21), parameters (*id.* at 38:58-64), and a machine learning system (*id.* at 8:49-9:3, 36:37-42). Because "'[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology[,]'" claim 17 fails *Alice* step two. *See Hawk Tech.*, 60 F.4th at 1359 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016)).

The ordered combination of the claims also establishes that they are abstract and non-inventive. The combination involves common-sense, conventional steps that flow from the abstract concept of image generation. For example, selecting a background, placing an object, positioning a camera, changing camera settings, and capturing shots from several viewpoints is the

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

ordinary sequence of any 3D rendering workflow and the same sequence a photographer follows. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept." *BSG Tech. LLC v. Buyseasons Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Failing both steps of *Alice*, the claims of the '272 patent are patent ineligible under section 101.

## VI. <u>The Complaint Fails to Plead Infringement, a Cause of Action for "Preliminary Injunction," or Entitlement to Lost Profits</u>

AIIA's Complaint suffers from similar defects as its complaints against OSARO and Parallel Domain, including a failure to plead direct, indirect, or willful infringement; pleading of a nonexistent "cause of action" for a preliminary injunction; and an unsupported demand for lost profits. Despite FANUC offering AIIA the opportunity to amend to address those defects after the Court issued its Order in the OSARO and Parallel Domain cases, AIIA refused. (Barath Decl. Exs. 2-3.) AIIA should not be given another opportunity to replead.

### A. AIIA Fails to State a Claim for Indirect Infringement.

AIIA fails to adequately plead any of the elements required to plead indirect infringement. *First*, to establish contributory infringement, a plaintiff must show the defendant's "knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Similarly, liability for induced infringement under 35 U.S.C. section 271(b) "requires knowledge that the induced acts constitute patent infringement." *OSARO*, 2026 WL 2970375, at *8 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). AIIA has not pled facts to establish FANUC's knowledge of any infringement of the '272 patent. *Second*, contributory and "inducement liability may arise if, but only if, there is direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 & n.3 (2014) (cleaned up). And AIIA has not adequately pled direct infringement. *Third*, AIIA's contributory infringement claim fails because it has not adequately pled that the components FANUC sells have no non-infringing uses or are a material part of the invention, or that FANUC's robots are especially designed for use in infringement. *Fourth*, AIIA has not adequately pled specific intent to support its induced infringement claim.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

### 1. AIIA Fails to Adequately Plead Knowledge

AIIA effectively concedes that it itself does not know whether the accused FANUC-OSARO integrated solution infringes. It alleges: "[u]pon information and belief, and subject to confirmation through technical discovery, Osaro's SightWorks software ***may*** utilize methods for generating synthetic image data for training machine learning models that infringe [the '272 patent]." (Compl. ¶ 1 (emphasis added); *see also id.* ¶ 25 ("Upon information and belief, and subject to confirmation through technical discovery, Osaro's SightWorks software and AutoModel AI engine ***may*** generate synthetic image data for training machine learning models used in robotic vision systems, and such generation, when practiced by Osaro and/or end users deploying the FANUC-Osaro integrated solution, ***may*** constitute direct infringement of the '272 patent.") (emphasis added).) This Court held that similar "information and belief" allegations against OSARO that SightWorks "might" perform claimed functions were "facially speculative." *OSARO*, 2026 WL 2970375, at *5. While AIIA argues that an October 2025 demand letter from AIIA to FANUC allegedly put FANUC on notice of infringement (Compl. ¶ 26),[3] FANUC cannot have knowledge of infringement based on that letter when AIIA itself does not know if FANUC infringes. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909, at *4–5 (N.D. Cal. July 23, 2020) ("information and belief" allegations "create[] an inference that [the plaintiff] likely lacks knowledge of the underlying facts to support the assertion[s], and is instead engaging in speculation to an undue degree") (cleaned up).

### 2. AIIA Fails to Plead Any Underlying Act of Direct Infringement

A complaint does not adequately allege direct infringement where it does "not adequately

[3] AIIA does not attach a letter from October 2025. It instead attaches a letter from January 2026. (Compl. Ex. A.) Thus, any pre-January 2026 allegations should be dismissed or stricken.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

explain *how* [the accused] products infringe the asserted patent claims." *Golden v. Qualcomm Inc.*, No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023) (affirming dismissal of direct, contributory, and induced infringement claims); *People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 2333880, at *2–5 (N.D. Cal. June 8, 2021) (dismissing because "complaint does not address *why* it is plausible that [the accused product] uses the specific elements of the patent as claimed") (emphasis in original); *SmartWatch MobileConcepts, LLC v. Google LLC*, No. 24-cv-00937-RFL, 2024 WL 2853966, at *1 (N.D. Cal. May 21, 2024) (dismissing where allegations did not "suffice to give [defendant] notice of how the accused product infringes"); *Estech Sys. IP, LLC v. Ooma, Inc.*, 770 F. Supp. 3d. 1228, 1233 (N.D. Cal. 2025) (dismissing complaint that merely "identif[ied] the [a]ccused [products], broadly describe[d] 'functions' of the [a]ccused [products] as a whole, and identif[ied] a claim from each asserted patent") (quotation marks and citation omitted).

The OSARO FAC attached a claim chart that purported—in conclusory fashion—to map SightWorks to every limitation of claim 17. (OSARO, ECF No. 21 Ex. D.) The Court concluded that AIIA failed to identify what features or portions of SightWorks constitute the '272 patent's claimed "graphics engine," "synthetic 3D scene," "scene metadata file," "virtual camera," or "synthetic image scene," and failed to explain "how or why [the] deep learning and advanced systems" allegedly used by OSARO "plausibly rely on synthetic data generation[.]" *OSARO*, 2026 WL 2970375, at *7–8.

The Complaint here does much less. It attaches no claim chart. It makes no attempt to map the accused FANUC-OSARO integrated solution to ***any*** of the twelve steps recited in claim 17. It instead paraphrases claim 17 and asserts that the accused solution "may employ methods that fall within the scope of the '272 patent's claims." (Compl. ¶ 25.) That is a textbook example of "reciting the claim elements and merely concluding that the accused product has those

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

AIIA's allegation that OSARO's CEO stated that "OSARO uses 'simulated data both for rapidly prototyping and testing new models as well as in trained models intended for use in the real world'" does not help it. (Compl. ¶ 25.) As an initial matter, claim 17 does not recite the ***use*** of simulated data; it recites a "method for ***generating*** synthetic image data." ('272 patent at cl. 17 (emphasis added).) That OSARO allegedly "uses" simulated data says nothing about how that data is generated—or even whether it is OSARO who it generates it. Further, the Complaint does not explain why the use (or even the generation) of "simulated data" plausibly involves the specific twelve-step method recited in claim 17 for generating "synthetic image data." On its face the term "simulated data" encompasses many techniques, including physics simulations of robotic grasps, simulated sensor noise, or synthetic images generated by methods sharing none of claim 17's limitations. Like the "deep learning [technology]" and "advanced systems" allegations the Court already rejected, the statement is at most "merely consistent with" infringement. *OSARO*, 2026 WL 2970375, at *8; *Iqbal*, 556 U.S. at 678. That is not enough to plausibly allege infringement.

Because AIIA has failed to adequately plead ***direct*** infringement, its indirect infringement claims necessarily fail. *Golden v. Google LLC*, No. 2024-2024, 2025 WL 1752485, at *3 (Fed. Cir. June 25, 2025) ("Because [plaintiff] has failed to adequately plead direct infringement by [defendant], his complaint also fails to sufficiently plead indirect infringement and willful infringement."); *Estech*, 770 F. Supp. 3d. at 1234 (same).

**3. AIIA fails to state a claim for contributory infringement.**

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is [1] material to practicing the invention, [2] has no substantial non-infringing uses, and [3] is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *In re Bill*

*of Lading*, 681 F.3d at 1337 (citation omitted). AIIA does not—and cannot—allege FANUC's M10iD/12 six-axis robot arm is material to practicing the '272 invention, has no substantial non-infringing uses, or is especially adapted for use with the accused OSARO software.

**a. FANUC's robot arm is not a material part of the claimed method.**

AIIA alleges that FANUC's "provision of robotic hardware . . . constitutes offering to sell and selling components especially made for use in infringement[.]" (Compl. ¶ 27.) Specifically, AIIA alleges that OSARO integrates its software with FANUC's "M10iD/12 six-axis robot arm." (*Id.* ¶ 23.) But the claimed invention is a method "for generating synthetic images," every step of which is performed by a "processor," a "computer graphics engine," or an "image projector" acting on virtual scenes and virtual cameras. ('272 patent at cl.17.) The claim makes no reference to any robotic hardware. A component that plays no role in any step of a claimed process cannot be a "material part of the invention." 35 U.S.C. § 271(c); *see Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1331 (Fed. Cir. 2010) (no contributory infringement because accused product that delivered *defragmented* data messages was not material to Wi-Fi transmission protocol invention that required *fragmentation*).

Apparently recognizing this, AIIA alleges that FANUC's hardware, "***when combined with Osaro's software***, form[s] a material component of systems that . . . may practice the methods claimed[.]" (Compl. ¶ 27 (emphasis added).) But that is not the test. The question is whether the component that FANUC sells—a six-axis robot arm—is "a material part" of the patented invention. *Fujitsu*, 620 F.3d at 1326 (quoting 35 U.S.C. § 271(c)). It undisputedly is not.

**b. Services, demonstrations, and marketing are not "components," "materials," or "apparatus."**

AIIA also alleges that FANUC's "technical integration services" and "technical integration, demonstration facilities, marketing support, and ASI network coordination constitutes offering to sell and selling components especially made for use in infringement[.]" (Compl. ¶ 27.) None of these is a "component," "material," or "apparatus" within the plain meaning of section 271(c). To the extent Count I rests on these activities, it fails as a matter of law. *See Cleveland Clinic Found. v. True Health Diagnostics, LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017) (affirming

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

dismissal of contributory infringement claim against company that provided lab testing services because "[a] party that provides a service, but no 'material or apparatus,' cannot be liable for contributory infringement"); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007) (rejecting contributory infringement claim premised on "provision of a service").

**c. AIIA does not plausibly allege that FANUC's robot arm lacks substantial non-infringing uses.**

To state a claim for contributory infringement, "a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading*, 681 F.3d at 1337. Allegations that "the accused products . . . cannot be used for purposes *other than* infringement" are "conclusory" and cannot support a claim of contributory infringement. *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022).

Here, AIIA does not allege that FANUC's robot arm itself lacks substantial non-infringing uses. Instead, it alleges that the FANUC-OSARO "***integrated systems*** have no substantial non-infringing use in the context of the FANUC-Osaro collaboration." (Compl. ¶ 27 (emphasis added).) Again, that is the wrong test. The question is whether the component FANUC sells has substantial non-infringing uses. *Sonos*, 591 F. Supp. 3d at 648 (dismissing contributory infringement claim where plaintiff alleged, in a "conclusory" fashion, that defendant's video-sharing and social media platform could not "be used for purposes other than infringement[,]" without identifying "any specific component part" of the app that lacked substantial non-infringing uses). AIIA does not allege that the M10iD/12 cannot be (or is not) used with software other than SightWorks. Nor can it. The complaint's "bare conclusion" that there is no substantial non-infringing use is not enough. *See Windy City Innovations, LLC v. Microsoft Corp.,* 193 F. Supp. 3d 1109, 1116 (N.D. Cal. 2016); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1047 (N.D. Cal. 2022) (dismissing contributory infringement claim that baldly asserted "substantial non-infringing use" but contained "no factual allegations as to whether the accused products [were] capable of substantial non-infringing uses or not") (citation omitted).

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**d. FANUC's robots are not especially designed for use in infringement.**

Contributory infringement also requires "that the combination for which [the] component was ***especially designed*** was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (emphasis added). AIIA does not allege that FANUC's robots are "especially designed" to be integrated with OSARO's software. In fact, AIIA concedes that FANUC "conducts substantial business in California by marketing, selling, and providing technical support for its robotic systems to customers in California, including [but not limited to] systems integrated with Osaro's SightWorks software." (Compl. ¶ 5.) AIIA alleges that OSARO "chose the FANUC six-axis model M10iD/12 robot arm because it . . . integrates easily with [OSARO's] vision and control software." (*Id.* ¶ 23.) That is, FANUC sells the M10iD/12 robot arm to various customers who are not accused of infringing the '272 patent. And OSARO selected FANUC's pre-existing M10iD/12 robot arm to integrate with OSARO's software. AIIA does not—and cannot—allege that FANUC especially designed the M10iD/12 robot arm to be integrated with OSARO's software.

**4. AIIA fails to state a claim for induced infringement.**

AIIA's FAC against OSARO pled that OSARO "is inducing infringement by actively promoting and instructing its customers to use these products in an infringing manner." (OSARO Action, ECF No. 21 ¶ 4.) The Court held that AIIA failed to "plead sufficiently that Defendants had the requisite intent." *OSARO*, 2026 WL 2970375, at *9. AIIA's allegations here are nearly identical and similarly deficient.

The crux of AIIA's inducement claim is that FANUC's alleged "active promotion and integration of OSARO's software with FANUC robotic hardware constitutes inducement of infringement under 35 U.S.C. [§] 271(b)." (Compl. ¶ 26.) This is wrong as a matter of law. "[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). In other words, "inducement requires that the alleged infringer knowingly

induced infringement and possessed specific intent to encourage another's infringement." *Id.* (quotations marks and citations omitted).

AIIA's own authority confirms this. It cites *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). (Compl. ¶ 39.) *Grokster* holds that "ordinary acts incident to product distribution, such as offering customers technical support or product updates," do not "support liability in themselves." 545 U.S. at 937. As this Court observed in the Order, "pleading that a defendant published user manuals and support articles for the accused products . . . has been held as 'wholly inadequate for an inference of specific intent' to induce patent infringement." *OSARO*, 2026 WL 2970375, at *9 (quoting *Railware, Inc. v. Peninsula Corridor Joint Powers Bd.*, No. 5:25-CV-05725-BLF, 2026 WL 800129, at *7 (N.D. Cal. Mar. 23, 2026); *see also P2i Ltd. v. Favored Tech USA Corp.*, No. 23-cv-01690-AMO, 2024 WL 4294652, at *7 (N.D. Cal. Sept. 24, 2024) (finding no plausible inducement when complaint alleged defendant provided product info "at trade shows, via promotional videos, . . . in [] advertisements and/or other public content" without stating how defendant "specifically encouraged infringement") (quotation marks and citation omitted).

AIIA points to five alleged activities by FANUC that purportedly "encourage and facilitate the use of OSARO's software:" "(1) technical integration of Osaro software with FANUC robots; (2) prominent demonstration of the integrated solution at FANUC's Innovation Center; (3) joint marketing at industry trade shows;[4] (4) direction of FANUC's ASI network to deploy the technology; and (5) public endorsement by FANUC executives." (Compl. ¶ 26.) But these allegations "collapse[s] the intent for a customer to ***use*** a product with the legally required intent to induce another to ***infringe*** the patent." *OSARO*, 2026 WL 2970375, at *9 (emphasis added); *see also* Barath Decl., Ex. 1, Ex. F at 58:10-59:14 ("THE COURT: [T]he case law draws a distinction between promoting and inducing the use of a product versus promoting and inducing

[4] AIIA's allegations regarding the trade shows fail for a separate reason. AIIA alleges that the trade shows took place in 2022 and 2023. (Compl. ¶ 23.) That was years before AIIA alleges it acquired the '272 patent in July 2025, *id.* ¶ 18, and before October 2025 when AIIA alleges it sent FANUC a demand letter, *id.* ¶ 26. Conduct undertaken without knowledge of a patent cannot evidence a specific intent to induce its infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011).



COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

infringement of a patent"). Producing the accused products, demonstrations, trade-show appearances, press releases, and coordination with distributors are quintessential "ordinary acts incident to product distribution." *See Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1195–96 (D. Or. 2015) (presentations and instructions that "simply describe how [the] products work" are '"ordinary acts incident to product distribution[,]"' not evidence of specific intent to induce) (citation omitted); *see also Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 2343163, at *4 (N.D. Cal. June 5, 2012) (allegations that the defendant provided other parties with "instructions" and "training" did not show specific intent to encourage infringement).

Especially where, as here, "a product has substantial noninfringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003). AIIA fails to—and cannot—allege any "specific examples" of FANUC having '"advertised benefits that [could] be achieved only through use of the asserted patent."' *Hypermedia Navigation LLC v. Google LLC*, No. 18-cv-06137-HSG, 2019 WL 1455336, at *2 (N.D. Cal. Apr. 2, 2019) (citation omitted). Because AIIA has not made any plausible, non-conclusory factual allegations showing specific intent, the Court should dismiss AIIA's induced infringement claim.

**B. AIIA Fails to State a Claim for Willful Infringement.**

As with indirect infringement, AIIA's willful infringement claim fails because AIIA fails to plead any underlying infringement. But it fails for the additional reason that, as in the FAC against OSARO, AIIA "collapse the knowledge requirement with the intent requirement." *OSARO*, 2026 WL 2970375, at *11. Here, AIIA alleges that FANUC's infringement is willful because it "has continued its indirect infringement despite receiving AIIA's demand letter and offers to license[.]" (Compl. ¶ 39.) The Federal Circuit has made clear that there is no "universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of a suit." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510–11 (Fed. Cir. 1990).

Because AIIA "has failed to make sufficient factual allegations" that FANUC's "behavior was 'egregious . . . beyond typical infringement,' it has failed to state a claim for willful infringement." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).

**C. The Complaint Fails to Plausibly Allege Entitlement to Lost Profits.**

As in the related actions, AIIA demands "lost profits." (Compl. ¶¶ 2, 37 & Prayer ¶ C.) To recover lost profits, a patentee must show '"a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales[,]"' and "the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales[.]" *OSARO*, 2026 WL 2970375, at *11 (quoting *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369 (Fed. Cir. 2003), and *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004)). AIIA does not allege that it sells any product. As in the related actions, "the complete absence of even a conclusory allegation as to the causal relationship issue renders the [Complaint] subject to dismissal as to lost profits." *Id.*; *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015). AIIA's lost-profits demand here should similarly be dismissed.

**D. The Court Should Dismiss AIIA's Preliminary Injunction Claim.**

As in the related actions, AIIA asserts a separate cause of action for a "preliminary injunction." (Compl. ¶¶ 41–51.) An injunction, however, is "not a cause of action." *OSARO*, 2026 WL 2970375, at *12; *Khankin v. JLR San Jose, LLC*, 720 F. Supp. 3d 816, 827 (N.D. Cal. 2024) ("Injunctive relief is a remedy and not, in itself, a cause of action[.]"). Like AIIA's cause of action for a temporary injunction that this Court dismissed, AIIA's second count against FANUC must be dismissed. *OSARO*, 2026 WL 2970375, at *12. AIIA has maintained this "Count" even after the Court directed it, in the related actions, to plead requests for relief only in its prayer. *Id.*

**E. The Court Should Dismiss the Complaint with Prejudice.**

Even if the Court does not dismiss the complaint on Section 101 grounds, it should dismiss

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

the complaint with prejudice. Before FANUC filed this motion, AIIA had—and squandered—at least four opportunities to amend. *First*, after filing complaints against OSARO and Parallel Domain, AIIA received letters from both defendants outlining deficiencies in AIIA's allegations, which OSARO additionally challenged in a motion to dismiss. AIIA attempted to amend to address these deficiencies. (OSARO Action, ECF Nos. 15, 21, 34-7, 34-9.) *Second*, AIIA received another letter from Parallel Domain explaining why the allegations in its FAC remained deficient. (*Id.*, ECF No. 34-10.) AIIA failed to amend its complaint to address the issues raised in that letter. *Third*, FANUC sent AIIA a letter in April 2026 explaining that its complaint against FANUC is deficient for many of the same reasons already identified by Parallel Domain and OSARO. (Barath Decl., Ex 1.) AIIA again failed to amend. *Fourth*, and most recently, this Court granted OSARO and Parallel Domain's joint motion to dismiss AIIA's FAC. FANUC sent AIIA another letter explaining why the Order confirms the deficiency of AIIA's complaint against FANUC. (*Id.*, Ex. 2.) FANUC's second letter offered to stipulate to AIIA amending its complaint to avoid wasting the parties' and Court's time and resources litigating issues that the Order already decided, but again AIIA failed to amend. (*See id.*, Ex. 3.)

There is no reason to believe a fifth bite at the apple will yield a better outcome. Where, as here, the plaintiff has been repeatedly put on notice of the deficiencies in its case and has failed to file a better-pleaded complaint, dismissal without further leave to amend is warranted. *See Huang v. Amazon.com, Inc.*, No. 2024-1428, 2025 WL 314718, at *3 (Fed. Cir. Jan. 28, 2025) (affirming denial of leave to file a subsequent amended complaint where the plaintiff "had consistently refused to fix certain defects in his pleadings, despite having notice of these issues"); *Coop. Ent., Inc. v. Kollective Tech., Inc.*, No. 5:20-cv-07273-EJD, 2024 WL 420747, at *5 (N.D. Cal. Feb. 5, 2024) (denying leave to amend after plaintiff wasted a prior opportunity to fix the issues with its pleading identified by the Court).

Even if the Court grants leave to amend as to the induced infringement claim, it should dismiss AIIA's Count II (for preliminary injunction) and Count I as to contributory infringement claim with prejudice. For the former is not a cause of action. As to the latter, the defects outlined in Section VI.A.3 arise from the nature of claim 17 and of FANUC's products, not from any lack

of detail in AIIA's allegations. No amendment can make a robot arm a material part of a software method for generating synthetic images that recites no robotic hardware, or make integration and marketing services into a "component." AIIA's Complaint confirms that amendment is futile.

## VII. CONCLUSION

For the reasons set forth above, AIIA fails to state a viable claim against FANUC. Accordingly, FANUC respectfully requests that this Motion be GRANTED and that the complaint be dismissed with prejudice.

DATED: October 30, 2026

COBLENTZ PATCH DUFFY & BASS LLP

By: [signature]

BARBARA N. BARATH
CHRISTOPHER J. WIENER
Attorneys for Defendant
FANUC AMERICA CORPORATION

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663